**GLASSMAN, Appellant v. GLASSMAN, Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6391.    Decided April 17, 1944.

386

Mr. Leonard H. Freiberg, Cincinnati, for Appellant.
Mr. Oliver G. Bailey, Cincinnati, for Appellee.

## OPINION

By ROSS, P. J.

The plaintiff has appealed to this court on questions of law from a judgment of the Court of Common Pleas of Hamilton County, Ohio, Division of Domestic Relations, dismissing her petition for divorce.

In that Court was filed and journalized separate finding of facts and conclusions of law which present the facts necessary for our consideration of this case.

Among the conclusions of law appears "for want of jurisdiction this action should be and is hereby dismissed at plaintiff's costs."

No other judgment was entered.

Although the action of the Court in dismissing the petition was improperly included with the conclusions of law, it did constitute a final judgment of the Court in question and will be here so considered.

From the finding of facts (no bill of exceptions is presented) it appears that the plaintiff and defendant were married at Cincinnati, Hamilton County, Ohio, on the 10th day of October, 1941. The defendant at that time was an officer in the Medical Corps of the United States Army and was stationed at Ft. Thomas, a United States Army Post, situated in Kentucky, just across the Ohio River from Cincinnati. The defendant at the time of his induction into the United States Army resided at Charleston, West Virginia, where he had been engaged in the practice of medicine. Thereafter it does not appear that he attempted to, or did establish any other domicile. The findings fail to show any designation by the husband of any place or mode of living.

Prior to her marriage, the plaintiff had been a bona fide resident, domiciled in Cincinnati, living with her parents, for a period of four years prior to her marriage. On the day of the marriage of plaintiff and defendant, "the parties set out on a trip by automobile to New Orleans, Louisiana, as the first part of the journey of the defendant to Panama, where he had been ordered by Army authority; the defendant continued his journey by ship to Panama and the plaintiff immediately

returned to the home of her parents at 809 South Crescent Avenue, Cincinnati, Ohio."

In November, 1941, the plaintiff joined defendant in Panama, and on December 9, 1941, two days after the Japanese attack on Pearl Harbor, left Panama and returned to Cincinnati "where she remained for approximately nineteen months until July, 1943."

"In that month the defendant returned to Continental United States, notified the plaintiff, and she met his train at Louisville, Kentucky, whence they returned immediately to Cincinnati. Later on in the month of July, the defendant was ordered to Camp Rucker in Alabama and went there; the plaintiff joined him there and remained for about two weeks, when she left him and returned to Cincinnati and filed this action on October 21, 1943.

"The trial court further finds that defendant was duly served with a copy of the petition and by publication according to law and has been guilty of gross neglect of duty toward the plaintiff and that the plaintiff is entitled to a divorce as prayed for **if she has the statutory residential** qualifications." (Emphasis ours.)

In its conclusions of law, the Court "finds that the residence of the defendant at the time of filing the petition was Charleston, West Virginia, and that the residence of the plaintiff **as a matter of law, followed that of the defendant, notwithstanding the fact, that she had never resided with her husband in his residence.**" (Emphasis ours.)

As stated before, it nowhere appears that the defendant attempted to or did acquire any other domicile than Charleston, West Virginia, the place of his residence at the time of his induction into the United States Army.

The plaintiff at no time resided in any legal domicile of the defendant, acquired or designated, and never after her marriage voluntarily acquired any domicile other than that of her parents, in Cincinnati, Hamilton County, which she had possessed for four years prior to her marriage.

The sole question presented for decision by this Court is whether or not a trial court had jurisdiction over the subject of the action. If the plaintiff had not been a resident of the State of Ohio for one year prior to filing her petition, then the Court had no power to consider or pass upon the plaintiff's claim for divorce. Jurisdiction over the person may be waived. Jurisdiction over the subject of the action

cannot be conferred even by consent. Was the plaintiff a **resident** of Ohio for one year prior to filing her action for divorce?

(1) The residential qualifications of a plaintiff in a divorce action brought in an Ohio Court are specified in §11,980, GC, which provides in part as follows:

"Except in an action for alimony alone, the plaintiff must have been a resident of the state at least one year before filing the petition."

(2) Such residential requirements in state statutes have been almost universally held to be jurisdictional in character. If the plaintiff in a divorce action has not been a resident in the state for the period prescribed by statute, the trial court has no jurisdiction to consider the action and any judgment rendered in such a proceeding is absolutely void, in the state of trial and elsewhere. Chandler v Chandler, 132 Va. 418; Sang v Sang, 240 Wis., 288; Miller v Miller, 33 Fla., 453; Bradfield v Bradfield, 154 Mich., 115; Williams v State of North Carolina, 317 U. S., 287; Winston v Winston, 271 Fed., 551; Golden v Golden (New Mexico) 68 Pac. Rep. (2) 928; DuQuesnay v Henderson (California) 74 Pac. Rep. (2) 294.

(3) The Court of a state in which a petition for divorce is filed has the power to determine from the evidence submitted to it whether or not statutory jurisdictional requirements have been met by the plaintiff. **Black v Black 110 Oh St., 392.**

(4) It has been generally determined in Courts where the matter has been considered that the word "residence" when used in statutes conferring jurisdiction in divorce actions means domiciliary residence, or, in other words, that a temporary residence, no matter how extended, does not meet the requirements of such statutes unless accompanied by an intention of the party involved to constitute such residence a domicile. William v State of North Carolina, 317 U. S., 287 (supra); Howe v Howe, 179 Va., 111; Ex Parte State, ex rel. Altman, 237 Ala., 642; Blair v Blair, 149 Kan., 3; St. John v St. John, 291 Ky., 363; Lamb v Lamb, 57 Nev., 421.

(5) It is a rule of common law accepted and adopted generally that the wife upon her marriage is by law invested with the domicile of her husband. Foss v Foss, 105 Conn., 502; Bruce v Bruce, 176 Ark., 442; Wheeler v Burgess, 263

Ky., 693; Weisinger v McGehee, 160 Miss., 424. See also: 28 C. J. S. 24; 17 Am. Jur., 616.

(6) It has, however, been held that this rule is subject to a qualification that such obligation on the wife is only effective when the husband has provided and designated a domicile. Ferguson, Admr. v Ferguson, Admr., 255 Ky., 230; Magnuson v Magnuson, 190 Minn. 153.

The statute in Ohio giving the husband the right to ▮ fix domicile also indicates that some affirmative action is required on the part of the husband.

**Section 7996 GC,** provides:

"The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto."

(7) The domicile of one entering the armed forces of ▮ the United States remains the same throughout service in such forces unless a new domicile is voluntarily selected by such person. Dicks v Dicks, 177 Ga., 379; Harris v Harris, 205 Ia. 108; Winston v Winston, 271 Fed. 551 (supra); Alburger v Alburger, 138 Pa. Super. 339. See, also; 28 C. J. S. 28: 17 Am. Jur., 634.

(8) Although a member of the armed forces retains by operation of law the domicile possessed at the time of connection with such armed forces, he may select a domicile even at a post, if such selection be evidenced by bona fide intention and residence. St. Johns v St. Johns, 291 Ky. 363 (supra).

(9) It has been held generally that a wife upon the aggression of her husband may select a new domicile, independent and separate from that of her husband. Norris v Norris, 224 Ala. 678; Caheen v Caheen, 233 Ala. 494; Ferguson, Admr. v Ferguson, Admr., 255 Ky., 230 (supra); George v George, 190 Ky., 706; Magnuson v Magnuson, 190 Minn. 153 (supra); George v George, 143 La. 1032; McCollum v McCollum, 153 Wash. 1; Torlonia v Torlonia, 108 Conn. 292; Chever v Wilson, 9 Wallace (U. S.) 108, 123. See, also: 27 C. J. S., 650; 17 Am. Jur., 617; Restatement, Conflict of Laws, section 28, p. 51.

The Ohio statute, §11,982 GC, is but an iteration of this rule:

"When a wife files a petition for a divorce, or for alimony,

the residence of her husband shall not be so construed as to preclude her from the provisions of this chapter."

(10) As indicating the ineffectiveness of the domicile of the husband to control that of the wife after separation, even upon the aggression of the husband, it has been held that the wife may not enter the jurisdiction of the husband's domicile and without complying with **residential** requirements then give a court jurisdiction over her action for divorce. **Malgras v. Malgras, 15 Oh Ap, 335.** The first paragraph of the syllabus of this case is:

"The courts of this state are without jurisdiction to hear an action for divorce where the plaintiff has always lived in a foreign jurisdiction although her husband's domicile has been in the state for several years."

See, also: Dutcher v. Dutcher, 39 Wis. 651; Hewes v Hewes, 16 N. Y. S. 119; Thomas v Thomas, 215 N. Y. S. 405; Schonwald v Schonwald, 55 N. C. (2 Jones Eq.) 367.

(11) But it is asserted by the appellee that, in spite of the conclusions consequent upon admission of the force of what has heretofore been noted, the plaintiff must have resided in Ohio with domiciliary intention for one year prior to her filing her action for divorce. It is admitted that having so resided, she might then file an action over which the Ohio trial court would have jurisdiction. It is obvious then that the question now presented is whether the mere technical legal domicile of the husband (and it is to be noted that the trial court in its findings merely stated the **residence** of the defendant prior to his connection with the United States Army) is sufficient to have broken the term of continuous domiciliary residence of the plaintiff for more than four years prior to the filing of her petition.

At the outset two quotations from authorities seem most pertinent.

In William's v State of North Carolina, 317 U. S., 287, supra, at p. 300 of the opinion, Mr. Justice Douglas says:

"As stated by Mr. Justice Holmes in his dissent in the Haddock case, 201 U. S., at page 630, they constitute a pure fiction and fiction always is a poor ground for changing substantial rights."

In Rancourt v Hahn, 10 C. C. (n. s.) 313, at 317, the Court say:

"In all the cases examined we find none where it has been held that after one has acquired a residence in a particular state or county, he can cease to be a resident of such state or county, until he has actually left the place of which he had been a resident."

It is to be remembered that while the plaintiff did leave temporarily at times the place of her domicile, she never at any time voluntarily chose another domicile, nor did her husband do so for her after entering the Army.

It is not claimed or even suggested that the plaintiff at any time after her marriage acquired any domicile except that foisted upon her by obeissance to a pure fiction of the common law.

A careful examination has been made of all cases dealing with the questions here involved. Only in those noted hereafter has been found direct attention to the peculiar situation presented in the instant case.

(11) These cases and the logic of the matter sustain the conclusion that the technical legal fiction of the common law requiring the domicile of the wife to follow that of the husband cannot be employed to destroy the domiciliary rights of a wife who has never been in any domicile of her husband, who has never by any voluntary act lost a domicile possessed for many years beyond the statutory requirement, in the jursdiction in which she sues for divorce, whose only absences from her domicile have been attendance upon her husband at the various posts, to which under Army orders he has been temporarily assigned, who has never been advised by her husband that he has chosen a "place or mode of living" amounting to the establishment of a domicile, who has suffered aggression by the husband entitling her to a divorce, who has separated from him prior to the institution of an action for divorce, and, where the husband's claim to domicile is predicated upon mere residence prior to his entering the service of the United States Army.

In the instant case, therefore, she has the necessary residential and domiciliary requirements under the statutes of Ohio to sustain the jurisdiction of the trial court over the instant action. Sustaining these conclusions upon facts very similar is the decision of the Supreme Court of Illinois filed in 1939. That case is Berlingieri v Berlingieri, 372 Ill. 60. The Supreme Court in that case reversed the judgment of the

Appellate Court of Illinois, which in turn, had set aside a judgment of divorce granted the plaintiff by the Circuit Court of Cook County. The essential facts involved are that the parties were married July 31, 1937, at Harrison, New York. The plaintiff wife was at the time of filing her petition living in Chicago, Illinois, and had lived in that City all her life. After her marriage in New York the plaintiff and her husband had resided at separate hotels in New York City until August 3, 1937, and on that date she left for California and her husband followed her there by automobile. Substantial grounds for divorce occurred in California from August 7 to August 20, 1937. She then returned to her former residence in Chicago. The husband had a technical legal domicile in Rome, Italy, being styled by the court as "an international itinerant." The Illinois statute requiring residence prior to filing a petition for divorce is much similar to our own. It reads:

"No person shall be entitled to a divorce in pursuance of the provisions of this act, who has not resided in the State one whole year next before filing his or her complaint or petition, unless the offence or injury complained of was committed within this State, or while one or both of the parties resided in this State."

It was claimed as in the case at bar that although the plaintiff has had a bona fide residence in the State for many more years than is required by the statute, this jurisdictional requirement was interrupted by the domiciliary status of her husband, predicated upon the legal fiction of the common law.

The reasoning and conclusions of the Supreme Court of Illinois are so logical and reasonable that in fairness to that Court they are repeated here:

"While the proof fails to show that Berlingieri has ever established a permanent domicile in any country, his technical domicile may be said to be in Italy and thus it is argued that, under established rules of law, Mrs. Berlingieri's domicile would follow that of her husband. We do not believe that the legislature intended to withhold the right to access to our courts from a life-long resident of this State merely because she happened to marry someone technically, but not

actually, domiciled elsewhere. The, use of the concept of domicile in revenue cases and like matters is based upon reason and practical necessity. For example, there must be one place having jurisdiction to tax personal property; otherwise, the conflicting claims of various taxing authorities would result in confusion and possible depletion of an estate subject to tax. No such necessity appears in divorce cases. The mere.fact that a person may have more than one residence and, therefore, may possibly secure a divorce in more than one jurisdction under our interpretation of the statute, does not render that interpretation improper. The wife's established domicile in Illinois could not shift to that of her husband until he had established one elsewhere—and this his own testimony shows he had not done."

The court also stated that the word "residence" as used in the jursdictional statute "was intended to have its ordinary and commonly accepted meaning."

In the year 1927, the Supreme Court of Washington in the case of Spielman v Spielman, 144 Wash. 421, reached a similar conclusion on facts quite similar to those involved in the Illinois case. Again, the lower court was reversed. The, facts are stated in the opinion of the Court:

"Appellant was born and lived all her life in the city of Spokane in this state. In the spring of 1925, appellant's mother, being in ill health, went to the city of Portland, in the state of Oregon, for a change of climate, or for treatment. Appellant accompanied her mother for the purpose of caring for her. While' so temporarily.sojourning in Oregon, appellant was married to the defendant on May 21, 1925, at Portland.

"The defendant was a traveling salesman, covering a territory described as being 'west of Denver,' and had no known or permanent abiding place. He was born in the state of Maryland, but had left that state some fifteen years before his marriage, only returning to it once thereafter for the. purpose of a brief visit with relatives. After the marriage, the couple remained in Portland at an hotel for about ten days, when the husband left to continue his usual business trip, and the wife remained in Portland for a few weeks in attendance upon her mother. In the latter part of July following, appellant, with her mother, returned to the parental home in Spokane. The defendant joined her there some

time later, and for six or seven weeks the couple lived in the home of the wife's parents in Spokane. The husband then went to Seattle, secured a position there, returned and took his wife to Seattle, where they remained for two weeks. At the end of that time he resigned the Seattle position, and the couple went again to Portland. The husband there obtained employment, which he held only four days, and following that he went to California, and the wife returned to her parents' home in Spokane, where she has ever since remained."

The Washington statute is similar to that of Illinois and Ohio. Quoted in the opinion, it reads:

"Any person who has been a resident of the state for one year may file his or her complaint for a divorce or decree of nullity of marriage, under oath, in the superior court of the county where he or she may reside, and like proceedings shall be had thereon as in civil cases."

Again the language of this court is worthy of repetition here:

"What did the legislature intend by the language 'Any person who has been a resident of the state for one year'? The trial court seems to have adopted the view that, when appellant married, she thereby abandoned her previous domicile and place of residence, and, in the eye of the law, her domicile and residence thereafter became that of her husband. In State ex rel. Baldwin v Superior Court, 11 Wash. 111, 39 Pac. 818, this court recognized that the distinction between domicile and residence is an extremely technical one, but apparently recognized that there might be cases in which such a distinction should be drawn. We are, therefore, called upon to decide whether the legislature meant, by the language quoted, the technical domicile of the law, which sometimes differs from residence, or gave to the word 'residence' its usual and commonly accepted meaning. Shumaker and Loungsdorf's Cyclopedic Law Dictionary defines domicile as being 'that place where a man has his true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.' Anderson's Law Dictionary defines it as 'the place where a person lives or has his home; that is, where one has his true, fixed, permanent home and principal establishment, and to which, when ever he is absent, he has the intention of returning.' "

"Upon the theory that a domicile is abandoned only when a new domicile is established, an argument can be advanced to the effect that the husband having been born in Maryland and never having established a domicile elsewhere, the marital domicile became that of the husband, and was therefore in Maryland. But such a construction leads to absurd results in this case and leaves the wife with absolutely no forum whatever in which to seek relief. While for purposes of substantial justice the husband's domicile might be held to be in Maryland, yet, when it leads to injustice, it can not be held that either he or the marital community was a resident of Maryland within the meaning of that term as used in our statute."

"We are convinced that the legislature used the word 'resident' in its usually accepted meaning, and, applying that meaning here, the appellant, who never had resided outside of this state, should not have that residence taken from her by any legal fiction until there is shown an intention on her part, or on the part of the marital community, to reside elsewhere. The record discloses that the husband had no residence within the meaning of our statute, and that there never was any intenton on the part of either spouse, during the time they lived as such, to reside anywhere outside of this state, and therefore the wife's residence in this state was never abandoned, and still continues. This is not a case of sojourning within the state for the purpose of taking advantage of our laws, and calls for very different treatment."

The cases of Wood v Wood, 140 Ark., 361, and Norris v Norrs, 224 Ala., 678, also sustain the conclusions reached in the Illinois and Washington cases.

Only one other case presenting similar facts to those involved in the instant case and those in Illinois and Washington has been found and that is the case of Winston v Winston, 271 Fed., 551 (supra). Van Orsdel, Associate Justice states the opinion of the Court of Appeals of the District of Columbia, handed down March 7, 1921:

"Plaintiff avers in her bill that she and defendant were married in this District on September 1, 1917; that defendant was a naval officer assigned to duty at the Navy Yard, in Brooklyn, N. Y., that immediately after their marriage they

took up their residence in Brooklyn, and, that it was from there that plaintiff, on March 20, 1918, left defendant, refusing longer to live with him. It also appears that defendant was born in North Carolina, and had lived there with his parents until the time of his appointment in the Naval Academy; that he is officially registered in the Navy as a resident of North Carolina; that, for several months prior to his marriage, he had been stationed in Brooklyn; and that at the time of the trial he was stationed in Philadelphia, Pa.

"It is unneccessary to determine whether the marital domicile in this case was in North Carolina or New York, since it is clear that it never was in the District of Columbia. It is not sufficient that, prior to her marriage, plaintiff had resided many years with her parents in the District of Columbia, and that, when she left her husband in Brooklyn, she returned here. **Inasmuch as she and defendant went into another jurisdiction and acquired a domicile,** it is necessary for her, upon her return, to reacquire a residence for sufficient period to confer jurisdiction upon the court to decree a divorce, which, in this instance, is three years. Harteau v Harteau, 14 Pick. (Mass.) 181, 25 Am. Dec. 372. That plaintiff, however, could return here and acquire such domicile without reference to the domicile of her husband is settled. Frary v Frary, 10 N. H., 61, 32 Am. Dec. 395; Carty v Carty, 70 W. Va. 146, 73 S. E. 310, 38 L. R. A., (N. S.) 297." Emphasis added.

In this case, the Court specifically refused to place the basis for its decision upon the technical common law fiction of unity of domicile. It will be noted from the words underscored that the Court found that the plaintiff and defendant **had acquired a domicile** outside the District of Columbia.

Even if this case be considered authority contrary to that of Illinois and Washington, it seems that in those cases the Courts squarely considered the effect of the common law fiction of technical domicile, while in the District of Columbia case, the effect of this fiction was not specifically considered.

The situaton here presented apparently is one which has not often arisen. No logical reason can be found for denying to a bona fide resident of this state access to its courts, solely because of the intervention of a technical legal fiction of the common law which comes into violent collision with facts which prove beyond question full domiciliary residence well beyond the statutory requirements for jurisdiction.

The trial court had jurisdiction of the action for divorce; it committed error, prejudicial to the plaintiff in dismissing the same, its judgment is reversed and the case remanded for further proceedings in accordance with law.

HILDEBRANT, J., & MATTHEWS, J., concur.