**HAYMES**

v.

**COLUMBIA PICTURES CORP. et al.**

United States District Court
S. D. New York.

Aug. 2, 1954.

Hays, Podell, Algase, Crum & Feuer, New York City, Mortimer Hays, Maury L. Spanier, New York City, David T. Bazelon, Brooklyn, of counsel, for plaintiff.

Schwartz & Frohlich, New York City, Ferdinand Pecora, David H. Horowitz, New York City, of counsel, for defendants.

WEINFELD, District Judge.

This is a stockholder's derivative action in which jurisdiction is based upon diversity of citizenship. The defendants, challenging the existence of the necessary diversity, move before answer to dismiss the action for lack of jurisdiction. The defendants contend that plaintiff is not a citizen of Nevada as alleged in her complaint, but is, in fact, a citizen of either New York or California. The defendants include a New York corporation and a California corporation. If their contention that plaintiff is a citizen of either New York or California is upheld, there is no diversity of citizenship and the action is not maintainable in this Court.

■ The parties are in substantial accord on the general principles which govern the disposition of this application. For the purpose of federal diversity jurisdiction, a party is a citizen of the state in which he is domiciled.[1] A corporation is a citizen of the state of its creation;[2] and in a derivative action the corporation on whose behalf the action is brought, though only a nominal defendant, is, nevertheless, for the purpose of diversity jurisdiction, treated as a true defendant.[3]

■ The defendants having challenged the allegations upon which federal jurisdiction is predicated, the plaintiff has the burden of establishing the requisite jurisdictional facts.[4] Domicil consists of physical presence in a given jurisdiction with intent to reside therein permanently or indefinitely.[5] An existing domicil continues until a new one has been acquired.[6] To acquire a new domicil it must appear that one has come to the place of the alleged domicil coupled with the intention to make that place his permanent home or for an indefinite period.[7]

We now turn to a consideration of the facts. In addition to detailed affidavits, there were also submitted to the Court extensive depositions of the plaintiff and her husband taken by the defendants. The defendants thus having conducted a full cross-examination, the record is, in some respects at least, similar to that on a full hearing of the issues.

In 1949, the plaintiff, theretofore domiciled in the United States, married a domiciliary of France. She thereafter resided with her husband in France until 1951 and presumably acquired a domicil in France. In 1951, the couple separated and the plaintiff returned to the United States with her children, one a child of the 1949 marriage. She consulted counsel who advised that legal grounds existed not alone for a divorce

1. Williamson v. Osenton, 232 U.S. 619, 624, 34 S.Ct. 442, 58 L.Ed. 758.

2. Shaw v. Quincy Mining Co., 145 U.S. 444, 450, 12 S.Ct. 935, 36 L.Ed. 768.

3. Lavin v. Lavin, 2 Cir., 1950, 182 F.2d 870.

4. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183.

5. Williams v. North Carolina, 325 U.S. 226, 229, 65 S.Ct. 1092, 89 L.Ed. 1577; State of Texas v. State of Florida, 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817; Williamson v. Osenton, 232 U.S. 619, 622, 34 S.Ct. 442, 58 L.Ed. 758; Matter of Newcomb, 192 N.Y. 238, 250, 84 N.E. 950; Restatement, Conflict of Laws, § 15.

6. Desmare v. United States, 93 U.S. 605, 610, 23 L.Ed. 959; Sun Printing & Publishing Ass'n v. Edwards, 194 U.S. 377, 383, 24 S.Ct. 696, 48 L.Ed. 1027; Restatement, Conflict of Laws, § 23.

7. Gallagher v. Philadelphia Transp. Co., 3 Cir., 185 F.2d 543; Berger v. Berger, 3 Cir., 210 F.2d 403, 405.

but for the retention of custody of this child. She was further advised that both her marital status and her rights with respect to the custody of the child would be governed by the laws of the state in which she decided to make her permanent home and that mere compliance with the requirements for statutory residence would not necessarily entitle a divorce decree to full faith and credit in other states or foreign countries.

The plaintiff's purpose to secure a valid divorce decree and effective and undisturbed custody of the child was of paramount consideration and this, along with other important personal and professional matters, led to a deliberate decision with respect to establishing a permanent home, and she decided upon Nevada. Accordingly, the plaintiff became a resident of Nevada with her children in the spring of 1951. She instituted a divorce action on September 1, 1951, about five months later, instead of at the expiration of the minimum six-week residence prescribed by Nevada law. The action was not heard until January 26, 1953—about sixteen months later— when a final decree was entered based on a finding of fact not alone that the plaintiff was a bona fide resident and domiciliary of Nevada, but that she then had the intent to make Nevada "her home, residence and domicile for an indefinite period of time."

■ There are other items of evidence, each by itself perhaps not too significant, but which when taken together, strongly confirm actual adoption of Nevada as plaintiff's domicil: In 1951, plaintiff established a bank account and opened a safe deposit vault in Nevada, which has been maintained continuously ever since. She executed her will as a resident of Nevada in accordance with its laws. Since 1951, her tax returns, both federal and state, have

been executed as a Nevada resident. During the same period she filed non-resident tax returns in California, giving Nevada as her residence. In 1952, while in Europe, she sought an absentee ballot as a citizen of Nevada, but the requirement of personal registration frustrated this effort to vote. She remarried in Nevada in September, 1953; the marriage certificate gives Nevada as her residence, and she also executed a prenuptial agreement in and under the laws of Nevada. Though between the spring of 1951 and May 1954, when this suit was begun, professional engagements and business exigencies kept the plaintiff away from Nevada for substantial periods, these absences did not interrupt the continuity of her legal domicil in Nevada.[8]

■ I am satisfied that the record abundantly establishes that when the plaintiff on her return to the United States in the spring of 1951 took up residence in Nevada she did so with the genuine intention of making it her permanent residence, and that she thereby acquired a Nevada domicil.

The defendants urge, however, that whatever the plaintiff's domicil may have been before, on her remarriage in September, 1953, her domicil became that of her husband, as a matter of law. They argue, too, that her husband's domicil is New York or California. For the present purposes, I assume, arguendo, that the plaintiff's domicil at the commencement of this action was her husband's. I, therefore, find it unnecessary to discuss the plaintiff's interesting contention that since the rule by which the wife's domicil becomes that of her husband rests on the common-law fiction of the unity of husband and wife—a vanishing fiction with little, if any, validity today—it is no longer universally applied and ought not to apply in this case.[9]

---

3. Cf. Berger v. Berger, 3 Cir., 210 F.2d 403; Matter of Newcomb, 192 N.Y. 238, 251, 84 N.E. 950.

9. See Williamson v. Osenton, 232 U.S. 619, 625, 65 S.Ct. 1092; Commonwealth v. Rutherfoord, 160 Va. 524, 169 S.E.

It is conceded that up to August 1953, the plaintiff's husband had been domiciled in California. On August 10, 1953, he went to Nevada. He claims that he became a true resident of that state. The defendants insist, on the other hand, that this claimed residence is spurious. No useful purpose will be served by a recital of the many items of evidence bearing on these contentions, for the issue turns on basic matters rather than on minutiae.

■■■■■ The plaintiff's husband's presence in Nevada, begun in August 1953, had a dual purpose. He wished to secure a divorce from his then wife and, after the divorce, he planned to marry the plaintiff. His claim of a Nevada domicil must be analyzed in this setting. A decree divorcing him from his former wife who filed a formal answer, but offered no evidence, was made by the Nevada Court on September 23, 1953, and on the day following he married the plaintiff. The Court found the plaintiff in the divorce action to be a bona fide resident of Nevada. While this finding does not preclude independent inquiry in this action into his Nevada residence, there is no reason to indulge a presumption against it. It appears, moreover, that before the husband chose Nevada as his domicil he and the plaintiff and her counsel discussed the plaintiff's own Nevada domicil and the compelling reasons which originally prompted her to adopt it. He recognized the importance to the plaintiff of the Nevada domicil and he and the plaintiff agreed that, upon their marriage, Nevada should become their matrimonial domicil. The law is concerned with the fact of domicil, not with the motive which leads to its adoption.[10] Motives are immaterial, except as they indicate intention. A change of home, accompanied by the genuine intent to adopt the new place as a permanent home, effects a change of domicil, whatever the reasons for the change.[11]

The plaintiff has shown persuasively that her husband was in complete sympathy with her purpose to maintain her Nevada domicil unimpaired, that it became his equally and that he adopted Nevada as his domicil in effectuation of their joint purpose.

The absences of the plaintiff's husband from Nevada were temporary; similar in nature to the plaintiff's and occasioned by his own professional and business demands. In the circumstances, the delay in finding a fixed place of abode in Nevada, which the defendants press so strongly, is understandable and loses much of the weight which it might otherwise have.[12]

One item, of the many facts and circumstances relied upon by the parties to bolster their respective positions, serves in particular to support the claim that Nevada was the domicil of plaintiff's husband. He is an alien against whom deportation proceedings were instituted some time ago. Since his marriage to plaintiff and almost six months prior to the commencement by her of this action, he filed his annual registration as an alien, setting forth that he was a resident of Nevada; in the deportation proceedings he filed an affidavit to like effect. Wilful falsification of that affidavit constitutes a criminal offense.[13]

■■■■ Upon a careful review of all the evidence submitted on this applica-

909, 90 A.L.R. 348; McGrath v. Zander, 85 U.S.App.D.C. 334, 177 F.2d 649; Oxley v. Oxley, 81 U.S.App.D.C. 346, 159 F.2d 10; Glassman v. Glassman, 75 Ohio App. 47, 60 N.E.2d 716.

10. Williamson v. Osenton, footnote 9 supra, 232 U.S. at page 625, 65 S.Ct. 1092.

11. Matter of Newcomb, footnote 8 supra, 192 N.Y. at page 251, 84 N.E. 950.

12. Berger v. Berger, footnote 7 supra, 210 F.2d at page 405; Restatement, Conflict of Laws, § 16; Winans v. Winans, 205 Mass. 388, 91 N.E. 394, 28 L.R.A., N.S., 992.

13. 8 U.S.C.A. § 1306(c).

tion, I am persuaded that as of August 1953 plaintiff's husband severed his ties with California and thereafter never established permanent ties in any state other than Nevada—which became, and remains, the state of his domicil. It follows that, even if the plaintiff derives her domicil from her husband, her domicil is Nevada, and the motion to dismiss for want of diversity must be denied.

The foregoing denial requires consideration of the defendant's alternative motion (1) to require that the depositions of five of defendants' officers who reside in Los Angeles, California, be taken there instead of in this district; and (2) that other named officers who reside in New York City be examined before such five officers are examined in California.

Three of the five individuals who reside in California are officers of Columbia Pictures Corporation, the defendant against which are leveled the principal charges of breach of fiduciary obligation toward the Beckworth Corporation; the other two are officers of the Beckworth Corporation.

██ Columbia Pictures Corporation is a New York corporation whose principal executive offices are located in New York City, where the bulk of its records are located. The California officers have occasion to come to New York City on its business from time to time. The attorneys for the parties as well as the accountant, whose services are required in connection with the deposition, are all located in New York City—a factor to be taken into account.[14] Columbia's distribution activities, world-wide in scope, are directed and supervised from the New York City office. The fact that its production activities are concentrated in California does not, under the facts here presented, warrant a departure from the usual rule that a corporation be examined at its principal office and place of business.[15] The Court is not convinced that undue hardship would be imposed either on the corporation or on the individuals if the examinations are conducted in New York.[16]

The defendants express concern that the "continuous presence" in this district of any of the California residents for examination may be disruptive of corporate activities. Since the three officers whose examination has been directed in this district are important executives for one or more defendants, their respective depositions shall be so spaced as to avoid undue interference with their corporate services. I assume that able and experienced counsel for the parties will observe the usual amenities and agree upon a satisfactory time schedule and make other arrangements to serve their client's convenience and interests. In the event such an accord is not reached, the Court will incorporate in the order to be entered an appropriate protective provision.

██ With respect to the two officers of the Beckworth Corporation, a somewhat different situation is presented. The Beckworth Corporation, for whose benefit this derivative action was instituted, is a California corporation. Unlike the other California residents, the two are officers only of that corporation, and their activities are concentrated in that state. Eckel, a member of the California Bar, has never been in New York on corporate matters. Briskin has been here no more than once in the past three years. In the light of these facts it appears appropriate that their depositions be taken in California. Each party shall defray its own expenses and disbursements in connection with

14. Moore v. George A. Hormel & Co., D. C., 4 F.R.D. 15.

15. Goodman v. Lane, D.C., 12 F.R.D. 176; Cohen v. Pennsylvania R. R. Co., D.C.,

30 F.Supp. 419; 4 Moore's Federal Practice ¶30.07 (2nd Ed. 1950).

16. Cf. Prinias v. Andreadis, D.C., 12 F.R.D. 490.

the examination, the same, however, to be taxed against the unsuccessful party.

There remains the defendants' final request that the examination of the California residents be deferred until the conclusion of the depositions of the New York residents.

 Absent unusual or compelling circumstances,[17] an examining party should be permitted to examine witnesses or parties in the order he deems best calculated to disclose evidence or leads pertinent to the subject matter of his claim or defense. No sufficient ground has been presented for interfering with the control which the plaintiff here as the examining party would normally exercise in the order of the examination.[18]

Settle order in accordance with the foregoing.

---

17. Cf. Morrison Export Co. v. Goldstone, 2 Cir., 12 F.R.D. 258, 260.

18. Cohen v. Pennsylvania R. R. Co., D.C., 30 F.Supp. 419, 420; cf. Goodman v. Lane, D.C., 12 F.R.D. 176.