LESINSKI, Appellee,

v.

HENDERSON, Appellant.

[Cite as *Lesinski v. Henderson* (1996), 112 Ohio App.3d 70.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950743.

Decided June 26, 1996.

*James E. Burke,* for appellee.

*Roger D. Staton,* for appellant.

---

HILDEBRANDT, Judge.

Defendant-appellant, H. Thurman Henderson, appeals from the judgment of the Hamilton County Court of Common Pleas in which the court granted the petition of plaintiff-appellee, S. George Lesinski, to judicially dissolve Auditory Micromachines, Inc. ("AM"), an Ohio corporation.[1] The court further declared appellant and appellee co-owners of a patent application for an implantable hearing device held by AM. Appellant advances four assignments of error in support of his appeal, arguing that the trial court erred by (1) awarding as an asset of the company property it did not own, (2) failing to recuse itself because of a conflict of interest, (3) quashing a subpoena for a trial witness without a hearing, and (4) permitting the introduction of post-trial evidence of an accounting. Because we find all of the assignments to be without merit, we affirm the judgment of the court below.

In his first assignment of error, appellant contends that the trial court erred by awarding the patent application and corresponding patent cooperation treaty application ("patent application") for an implantable hearing device, because the

---

1. Appellee's petition to dissolve AM was brought pursuant to R.C. 1701.91(A)(4), which provides that a court of common pleas may order the dissolution of a corporation "when it is established that the corporation has an even number of directors who are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock * * *." Appellant and appellee each held one-half of the outstanding shares of common stock in AM, by which they were authorized to exercise one-half of the voting power of that corporation.

patent application belonged to the University of Cincinnati ("UC"), and not AM.[2] We are unpersuaded.

Specifically, appellant contends that the device for which the patent application was obtained belonged to UC and that the portion of the trial court's judgment declaring the parties co-owners of the patent application was precluded by R.C. 3345.14, which reads:

"All rights to and interests in discoveries or inventions, including patents thereon, *which result from research* or investigation conducted in any experiment station, bureau, laboratory, or research facility of any state college or university shall be the sole property of such college or university. No person, firm, association, corporation, or governmental agency which uses the facilities of such college or university in connection with such research or investigation and no faculty member, employee, or student of such college or university participating in or making such discoveries or inventions, shall have any rights to or interests in such discoveries or inventions, including income therefrom, except as may, by determination of the board of trustees of such college or university, be assigned, licensed, transferred, or paid to such persons or entities." (Emphasis added.)

We perceive that this assignment challenges the instant award as being against the manifest weight of the evidence, in that appellant is arguing that the evidence adduced demonstrated that the patent application for the implantable hearing device resulted from research conducted in a laboratory or research facility of UC.[3]

■ In determining manifest-weight-of-the-evidence questions, this court must remember that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Furthermore, deference must be given the findings of the trial court because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The interplay between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was succinctly set forth in the

---

2. This argument arose only after trial and prior to the trial court's final entry, by way of appellant's filing of a document designated "Notification to Court of Relevant Law which May Affect Final Entry" in which it was declared that UC was the only entity that could own the patent.

3. Appellant's attorney conceded the issue to be one of manifest weight during his oral argument.

holding of this court in *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]:

. " 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276.

On the state of the record before us, there is evidence which, if believed by the trial court, establishes that UC's resources were not used in such a way as to implicate R.C. 3345.14, in that there is testimony that there was no discovery or invention and consequent patent which resulted from research at UC. There is evidence that UC lacked the capability to produce the part of the implantable hearing device appellant was requested to design; that UC agreed it had no rights to that part of the implantable hearing device which had been designed, but that it might have rights to that portion which had not yet been designed; and that nothing was developed at UC which met the specifications necessary to create the implantable hearing device and make it work.[4] The record also contains exhibits indicating that AM is the owner of the patent application.[5]

Because we conclude that the trial court's judgment declaring the parties to be co-owners of the patent application is supported by competent, credible evidence, appellant's first assignment of error is overruled.

In his second assignment of error, appellant maintains that the trial court erred by failing to recuse itself in the exercise of equitable jurisdiction when it became aware of an alleged conflict of interest which precluded it from considering certain equitable remedies. The assignment is without merit.

At the conclusion of the proceedings below, the trial court responded to appellant's suggestion that UC hold the patent application for the parties in the nature of a receiver. In its remarks, the trial court, when considering its options, stated:

"The advantage to [dissolution] is that it's economical for the Court. Nobody comes back here with any further amendments, modifications, other arguments, other lawsuits, motions. That's over.

---

**4.** We also note that appellee specified to appellant that any research concerning the implantable hearing device must be done independently of UC, and that appellant assured him that the condition would be met so that research could be done without creating an interest in UC.

**5.** Appellant, during trial, suggested UC act as a holder of the patent. The record does not contain any evidence that UC was joined in the lawsuit as a party or that UC intervened as a party.

"The disadvantage to a trusteeship of some form and a third party arrangement is that nobody ever gets free of it and the parties are still there to deal with each other. And the Court is involved in some tangled thing that goes on and on.

"And then there is the problem of how to pay, if there is any payment that's been requested, which I would think, seems obvious to me, there was some testimony UC would not be interested in this. I would think that while [appellant] likes UC, there are two problems with that.

"*One of them is I've already stated I don't want to be in a position of awarding anything to the University of Cincinnati having been on the faculty and maybe going to be on it again. That's possible.*

"And secondly, it's distasteful to [appellee]. Why should you want to rub somebody's face in it? So I'm not real favorable to that suggestion." (Emphasis added.)

We have emphasized that part of the above statement of the court to which appellant assigns evidence of bias. While we are without authority to rule on whether a trial judge should recuse himself or herself from judicial proceedings,[6] we overrule appellant's assignment of error for the reason that the statement to which appellant objects is but a minor reason for the court's refusal to involve UC. The court's actual reason for not involving UC, as demonstrated by its June 23, 1995 letter decision, was that it found, based upon the evidence presented, a more viable alternative. Appellant's second assignment of error is overruled.

■ Appellant's third assignment challenges as error the trial court's quashing of a subpoena for the appearance of a witness at trial. We do not agree. The record discloses that on June 6, 1995, the trial court placed of record an entry granting appellee's motion to quash a subpoena for nonparty Robert Buechner and directing the parties to depose Buechner on June 7, 1995. According to the appellant, Buechner admitted during his deposition that he could not attend the trial date of June 8, 1995, because of a previously scheduled golf match. There are no depositions within the instant record. In any event, appellant has failed to demonstrate how he was prejudiced by the trial court's ruling, given that appellant had the opportunity to depose this witness for purposes of trial. Appellant's third assignment of error is, therefore, overruled.

In his fourth, and final, assignment of error, appellant asserts that the trial court erred by permitting the introduction of post-trial evidence of an accounting and not permitting appellant to conduct cross-examination with respect to that evidence. We find the assignment to be without merit.

---

6. See R.C. 2701.03.

 At the conclusion of the trial on appellee's petition to dissolve the instant corporation, the trial court issued a letter dated June 23, 1995 to the parties outlining its decision so that a judgment entry could be prepared. In that letter, the court ordered that the corporation should be dissolved subject to a full accounting by the parties as to the corporation's assets and liabilities. Thereafter, appellee submitted this information to the trial court in writing. Assuming for the sake of argument that this procedure was error, we find that the record demonstrates there was no objection by the appellant. The law is clear:

"An appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 643.[7] Accordingly, appellant's fourth assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN, P.J., and DOAN, J., concur.

---

7. Moreover, we cannot conclude from the record that such a procedure would constitute plain error where appellant has failed to demonstrate a manifest miscarriage of justice resulted therefrom. See *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327–328, 480 N.E.2d 794, 800.