OPINION
{¶ 1} The appellant, Lynda Gabel, appeals the December 16, 2003 judgment of the Common Pleas Court, Family Division, of Marion County, Ohio, which found a valid settlement agreement was reached between Lynda and the appellees, Todd Gabel and Larry and Marilyn Gabel. In addition, Lynda appeals the decision of the trial court to deny her motion for a continuance on July 2, 2003.
 {¶ 2} The facts relevant to this appeal are as follows. On May 31, 1996, Lynda and Todd were married. The following January, the couple had a son, Grant. However, the marriage eventually deteriorated, and Todd and Lynda separated in 1999. Despite an attempt at reconciliation, on June 14, 2000, they filed a petition for dissolution. Attached to this petition was a shared parenting plan, which designated Lynda as the residential parent for school purposes and provided Todd with companionship with Grant every other weekend and on Wednesdays from 4:00 p.m. until 9:00 p.m. The parties later amended this plan but the companionship times remained the same. On August 24, 2000, the Marion County Common Pleas Court issued a decree of dissolution of marriage and adopted the amended shared parenting plan.
 {¶ 3} Throughout Todd's and Lynda's separation and after their marriage was dissolved, Todd's parents, Appellees Larry and Marilyn Gable ("grandparents"), were significantly involved in Grant's life, often babysitting him when he was ill so that Lynda would not miss work and transporting him to Cleveland for visitation with his father when Todd relocated there. Eventually, Todd remarried, and in the summer of 2001, he and his current wife, Leah, moved to Florida. Thereafter, communication between Todd and Lynda became strained and visitation with Grant decreased. Often times when Todd could not exercise his visitation, his parents would exercise visitation with Grant. However, Lynda's relationship with her former in-laws also deteriorated, and she refused some of the grandparents' requests for visitation, as well as Todd's requests when he came to Ohio on days not designated as his for visitation. Thus began the current, much protracted litigation between Lynda, Todd, and the grandparents.
 {¶ 4} On February 26, 2002, Todd filed a motion for temporary orders regarding visitation with Grant and a motion to modify the shared parenting plan. One month later, Grant's grandparents filed a motion for visitation with him. The following month, the grandparents filed a motion to intervene, which the court granted on May 2, 2002. The court also issued temporary orders for visitation with Grant during the pendency of the motion to modify the shared parenting plan on that same day. The following day, the court filed its pre-trial orders, establishing a discovery deadline of July 25, 2002, a final pre-trial date, and the final hearing date: August 1, 2002.
 {¶ 5} On May 16, 2002, Todd filed a motion to continue the final hearing date, stating that he would be vacationing out-of-state with Grant on that date. This motion was granted, and the final hearing date was rescheduled for the following month, specifically, September 18, 2002. In the interim, Todd filed a second motion to modify the shared parenting plan, this time requesting that he be designated the residential parent. In June, Todd filed a motion for psychological evaluations of the parties.
 {¶ 6} On July 9, 2002, the court granted visitation time with the grandparents on the last weekend of every month and on Wednesdays from 4:30 p.m. until 7:30 p.m. However, Lynda did not comply with this order on more than one occasion and was later found in contempt. In addition, a guardian ad litem ("GAL") was appointed on August 23, 2002. On August 29, 2002, Todd filed a second motion for a continuance of the September 18, 2002 hearing in order to allow the GAL more time to investigate the case and for the court to rule on his motion for psychological evaluations. The grandparents filed a similar motion for a continuance, and the GAL responded in agreement with both of these motions.
 {¶ 7} On September 4, 2002, Lynda filed a notice of substitution of counsel. The trial court continued the final hearing and rescheduled it for February 26-27, 2003. On November 25, 2002, the court further ordered that the parties submit to counseling. On February 14, 2003, the GAL filed a motion for a continuance of the February 26-27, 2003 hearing, with the consent of all the parties. The GAL also filed a motion for psychological evaluations of the parties, as recommended by the counselor. The court granted both motions of the GAL on March 5, 2003. On April 2, 2003, the court scheduled the final hearing in this matter for July 2-3, 2003.
 {¶ 8} In June of 2003, Todd and Leah moved to Centerville, Ohio. On June 23, 2003, Lynda's attorney filed a motion to withdraw as counsel, stating that Lynda refused to cooperate in the preparation for trial, but the trial court denied this motion. On July 1, 2003, Lynda filed a pro se motion for a continuance of the July 2, 2003 final hearing, which the court also denied. At the final hearing the following day, Lynda requested that she be permitted to relieve her attorney of his representation of her. After some discussion, the court granted Lynda's request and she terminated the services of her attorney. She then proceeded to request a continuance in order to obtain a new attorney. The court denied this request and informed the parties that it intended to go forward with the final hearing. However, the GAL asked the court for a brief recess in order for the parties to attempt a settlement. The court granted the request, and the parties entered negotiations.
 {¶ 9} A few hours later, the parties reached an agreement, read it into the record, and informed the court that they were all in agreement with its terms. The settlement designated Todd as the residential parent, provided Lynda with visitation, and required Todd to keep his residence in central Ohio. This agreement also dismissed all of the pending contempt motions against Lynda and provided that visitation with the grandparents would be arranged through Todd during his companionship time with Grant.
 {¶ 10} On July 22, 2003, Lynda, represented by a new attorney, filed a motion to vacate the agreement and stipulations of the parties, entered on July 2, 2003. At this time, a judgment reflecting the settlement had not been filed. In response to Lynda's motion, Todd filed a motion to enforce the settlement agreement. On November 12, 2003, a hearing was held on these two motions. The matter was taken under advisement, and on December 16, 2003, the trial court overruled Lynda's motion, granted Todd's motion, and ordered the enforcement of the settlement between the parties. On March 3, 2004, the judgment entry modifying the shared parenting plan was filed. This appeal followed, and Lynda now asserts two assignments of error.
The trial court abused its discretion by denying appellant'spro se motion to continue the final hearing.
 The trial court erred when it ordered the enforcement of thesettlement agreement entered into by appellant who did not signsame voluntarily, was under duress and without the benefit ofcounsel.
 First Assignment of Error {¶ 11} Lynda first contends that the trial court erred in denying her motion for a continuance. Our review of this issue begins by noting that the decision to grant or deny a continuance is within the sound discretion of the trial court. State v.Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 57. Thus, such a decision will not be disturbed on appeal absent an abuse of that discretion. Id.
 {¶ 12} This Court has previously held that "[t]he review of a decision on a motion for continuance requires the appellate court to apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party." Burton v. Burton (1999), 132 Ohio App.3d 473,476. We further found that "[t]here are objective factors that a court must consider in determining whether to grant a continuance." Id. Among these factors are the length of the delay requested, whether previous continuances have been granted, the inconvenience to the parties, witnesses, attorneys, and the court, whether the request is reasonable or purposeful and contrived to merely delay the proceedings, and whether the movant contributed to the circumstances giving rise to the request. Id., citing State v. Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 13} In the case sub judice, the trial court noted that the parties were notified of the July final hearing date on April 2, 2003, that they had three months to prepare for the case, that Lynda had "contacted a potential substitute attorney as early as May of 2003[,]" and that this was a long and protracted case, wherein the court previously set aside two days for the final hearing, which was continued, and set aside two more days for this hearing. The court further found that all information necessary for the case had been provided with the exception of some information that Lynda, herself, had failed to provide. Moreover, the court found that a continuance would not be in Grant's best interests because of the need to finally resolve the case.
 {¶ 14} These findings were amply supported by the record. For instance, the record reveals that issues with visitation began to arise in 2001. Several contempt motions were filed over the next two years by Todd and the grandparents against Lynda in which they alleged that Lynda would not allow them to visit with Grant or to speak with him on the telephone during the times designated by the court. In February of 2002, Todd filed his first motion to modify the prior shared parenting plan, and the hearing was set for August, 2002.
 {¶ 15} Three months prior to the hearing, Todd filed a motion for continuance due to his vacation schedule with his son, which was granted. The hearing was then set for September 18, 2002. However, the GAL was appointed at the end of August, and Lynda substituted her first attorney for another attorney on September 4, 2002. Therefore, the trial court allowed a second continuance, and re-scheduled the final hearing date for February 26-27, 2003. On February 14, 2003, the GAL requested another continuance in order for psychological evaluations of the parties to be conducted as recommended by the family counselor, who the parties were seeing pursuant to a previous court order. The court once again allowed this continuance and scheduled the hearing for July 2-3, 2003.
 {¶ 16} Although most of the continuances permitted by the court were not done so at the behest of Lynda, as noted by her in her brief to this Court, all but one were provided in order to allow a more thorough investigation into the best interests of Grant and all were requested several days prior to the hearing date. However, Lynda made her motions for a continuance the day of and the day prior to the final hearing date. In addition, by the time of the July, 2003, final hearing date, the psychological evaluations were completed, as was the GAL's report, and ample time had elapsed to permit full discovery. Furthermore, several witnesses were subpoenaed, including an expert witness, and the attorneys, the court, and the parties, with the exception of Lynda, were prepared to proceed with the final hearing on that day.
 {¶ 17} Given these facts, particularly the lengthy litigation and the tumultuous circumstances surrounding visitation and contact with the six-year-old child at issue in this case, we cannot find that the trial abused its discretion in denying Lynda's motion for a continuance. Thus, the first assignment of error is overruled.
 Second Assignment of Error {¶ 18} In her second assignment of error, Lynda maintains that the trial court erred in enforcing the settlement, which she asserts was the product of duress. We initially note that settlement agreements are highly favored in the law. ContinentalW. Condominium Unit Owner's Assn. v. Howard E. Ferguson, Inc.
(1995), 74 Ohio St.3d 501, 502, citing Spercel v. SterlingIndustries (1972), 31 Ohio St.2d 36, 38; 15 Ohio Jurisprudence 3d (1979) 511, 516, Compromise, Accord, and Release, Sections 1 and 3; Bolen v. Young (1982), 8 Ohio App.3d 36. Furthermore, "[w]here the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract[,]" which a party may not unilaterally repudiate.Walther v. Walther (1995), 102 Ohio App.3d 378, 383, citingSpercel, supra. Therefore, "[i]n the absence of fraud, duress, overreaching or undue influence, or of a factual dispute over the existence of terms in the agreement, the court may adopt the settlement as its judgment." Walther, 102 Ohio App.3d at 383, citing Mack v. Polson Rubber Co. (1984), 14 Ohio St.3d 34, syllabus; Kelley v. Kelley (1991), 76 Ohio App.3d 505; Hollandv. Holland (1970), 25 Ohio App.2d 98.
 {¶ 19} In order to establish duress, a party must show "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) thatsaid circumstances were the result of coercive acts of theopposite party." (Emphasis sic.) Blodgett v. Blodgett (1990),49 Ohio St.3d 243, 246 (citations omitted). Thus, "a party must prove coercion by the other party to the contract." Id. at syllabus. Additionally, "[i]t is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." Id.
 {¶ 20} Here, Lynda contends that she agreed to the settlement under duress. Specifically, she asserts that she believed that she would be given a continuance in order to obtain new counsel, was emotional during the negotiations and was not thinking clearly, was neither prepared nor qualified to cross-examine the expert witness or any other witnesses, and that her only choice was to settle the case or proceed to trial. However, what she fails to acknowledge is that these circumstances were not created by Todd or his parents. Rather, she voluntarily released her attorney from his representation of her despite the court's inquiry regarding this decision. In this regard, the following discussion occurred between Lynda and the court:
THE COURT: And today's the day of the final hearing — you'reaware that this is the final hearing?
 LYNDA GABEL: Yes, ma'am, um-hum.
 THE COURT: And Mr. Brown has indicated to the Court that youwish to relieve him of his obligations to represent you?
 LYNDA GABEL: That is correct.
 THE COURT: You understand that you would be without counsel atthat point?
 LYNDA GABEL: Apparently, yes, ma'am. I have counsel to retain,but obviously cannot do that with Mr. Brown still on the case.
 THE COURT: Has Mr. Brown advised you of the situation that youwill place yourself in if he's not representing you today?
 LYNDA GABEL: He has advised me that it would be up to me torepresent myself and requesting a continuance to be representedby other counsel, yes.
 THE COURT: So you're doing this of your own free will?
 LYNDA GABEL: Yes.
 THE COURT: And with the knowledge of the consequences of theseactions?
 LYNDA GABEL: I acknowledge that we could proceed forth or Iwould be given the opportunity to — give myself the opportunityto have proper representation, yes.
 THE COURT: You understand that you could be in a situationthat you would be acting as your own attorney today?
 LYNDA GABEL: Yes, ma'am.
This discussion reveals that neither Todd nor his parents had anything to do with Lynda's decision to release her attorney from representing her and to proceed pro se. Thus, the circumstances were the result of her actions, not those of the opposing parties.
 {¶ 21} In addition, on the day of the final hearing after her continuance was denied and the parties negotiated for nearly two hours, the court asked Lynda if she had read the agreement and stipulation, if she participated in their creation, if she had the opportunity to negotiate her settlement on the stipulations, if she understood the terms of the settlement, and if she was in agreement with the terms. Each of these questions was answered in the affirmative by Lynda. Although she did state that she did not believe the agreement was in Grant's best interest, this does not negate the fact that she stated that she had read, helped create, understood, and agreed with the stipulations of the agreement. Furthermore, while in the presence of the court, Lynda noted items to which she did not agree, requested that they be changed, and they were. Thus, the court witnessed her actually participate in negotiations and the creation of terms. The court also stated that Lynda had a calm demeanor during this time.
 {¶ 22} Under these facts, Lynda failed to demonstrate that the settlement was a product of duress. While the choice to either proceed to trial without counsel or to settle the matter is not necessarily the most desirous of choices one has to make, difficult circumstances that are not the fault of the opposing party do not rise to the level of duress. Therefore, the trial court did not err in enforcing the settlement, and the second assignment of error is overruled.
 {¶ 23} For these reasons, the judgment of the Common Pleas Court, Family Division, of Marion County, Ohio, is affirmed.
Judgment affirmed.
Bryant and Rogers, JJ., concur.