[Cite as *Griffin v. Griffin*, 2019-Ohio-5260.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| AUDREY N. GRIFFIN, | : | APPEAL NO. C-180550 |
| | | TRIAL NO. DR-1501954 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JAMES A. GRIFFIN, | : | |
| Defendant-Appellant. | : | |


Appeal From:   Hamilton County Court of Common Pleas, Domestic Relations
              Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: December 20, 2019


*Zachary D. Smith, LLC*, and *Zachary D. Smith*, for Plaintiff-Appellee,

*Eppley Legal Group* and *Mark C. Eppley*, for Defendant-Appellant.

**WINKLER, Judge**.

{¶1} Defendant-appellant James A. Griffin ("James") appeals from the divorce decree entered by the Hamilton County Court of Common Pleas, Domestic Relations Division, granting plaintiff-appellee Audrey N. Griffin's ("Audrey") complaint for divorce. James contends the trial court erred by denying his motion to dismiss the action for lack of subject-matter jurisdiction, and that his status as service member entitled him to a stay or continuance of the hearing on his motion. Additionally, he argues the trial court erred by adopting the parties' agreement on parental rights and responsibilities and by ordering him to pay some of Audrey's attorney fees. For the reasons that follow, we affirm.

Background Facts and Procedure

{¶2} The record establishes that the parties met at James's home in Cincinnati, Ohio, in September 2012. At the time, Audrey was living with her parents in a house in Blanchester, Ohio, and obtaining a nursing degree at a local university. James contracted with the United States Navy for a minimum of five years. They married on July 27, 2013, in Cincinnati and, after a honeymoon, the two moved to Tennessee due to military orders. While in Tennessee, Audrey gave birth to their only child. The parties remained physically present in Tennessee until March 2015, when James was assigned to officer candidate school for 90 days in Newport, Rhode Island. While James lived in Rhode Island, Audrey and the parties' child returned to her parents' home in Ohio, which after a move was located in Anderson Township. After officer candidate school, James received orders to move to Pensacola, Florida, for navy pilot training. Audrey and James arrived in Pensacola in July 2015.

{¶3} After a domestic dispute in September 2015, Audrey again returned to her parents' home in Ohio with the child. She filed this complaint for divorce in the Hamilton

County Court of Common Pleas, Domestic Relations Division, in late October 2015, followed by an amended complaint in late December for the purpose of obtaining temporary orders of custody and support pursuant to Civ.R. 75(N). James remained in Pensacola and, after the magistrate had issued the temporary orders, moved to dismiss the Ohio action under Civ.R. 12(B)(1), contending that the Ohio court lacked subject-matter jurisdiction. James argued that Audrey's allegation that she met Ohio's six-month minimum residency requirement, set forth in R.C. 3105.03, was factually deficient. James then initiated divorce proceedings in Florida and obtained a contrary order of custody after averring that, among other things, he had no information of any custody proceeding pending in any court concerning the child.

{¶4} A hearing on James's motion to dismiss this action was continued until August 30, 2016. A week before the scheduled date, James moved to "continue" the hearing and, one day before, moved to "stay" the action. In both motions, James cited the Servicemembers Civil Relief Act ("SCRA"), which contains provisions addressing the postponement or suspension of civil legal proceedings when a military service member is on active duty. James indicated in his motions that he was on military training orders at Fort Meade in Maryland.

{¶5} The magistrate denied James's motions to continue and stay, and proceeded with an evidentiary hearing on the motion. James did not appear but he was represented at the hearing by counsel. After the presentation of evidence, including Audrey's testimony that she had not been physically present in Ohio for the entire six-month period immediately before the filing of her complaint, the magistrate found jurisdiction lacking and granted the motion to dismiss. Audrey filed an objection, arguing that her lack of physical presence was not determinative and that the evidence showed she

had never changed her domicile from Ohio, despite her involuntary moves based on military orders. The trial court sustained Audrey's objection and determined that Ohio had subject-matter jurisdiction.

{¶6} James appealed from the trial court's order denying the motion to dismiss for lack of subject-matter jurisdiction, but this court dismissed that appeal for lack of finality. *See Griffin v. Griffin*, 1st Dist. Hamilton No. C-170026, 2017-Ohio-8450 ("*Griffin I*"). The case then proceeded in the Hamilton County Domestic Relations Court. During this time, James did not cooperate with discovery requests or foster settlement of the issues and sought to be named the residential parent. James also produced copious amounts of irrelevant discovery that Audrey's counsel had to review. Audrey's counsel also had to defend her in the Florida divorce action.

{¶7} The case was set for a custody and property trial on May 4 and 11, 2018, before the magistrate. James appeared on May 4, and his attorney requested to relitigate the issue of jurisdiction. The magistrate granted that request. However, after Audrey's counsel elicited unfavorable admissions from James on cross-examination, the parties ended the trial and eventually settled all issues except for Audrey's attorney fees. James essentially accepted Audrey's proposed parenting plan naming her the residential parent that was similar to the recommendation provided by the court's parent specialist in mid-2016.

{¶8} After a hearing on attorney fees, the trial court entered the final decree of divorce, which included the agreed order on parental rights and responsibilities and a $30,000 award of attorney fees to Audrey.

4

Analysis

**{¶9}** In his first assignment of error, James argues the trial court erred by denying his Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction. He maintains that the evidence presented at the evidentiary hearing showed that Audrey had failed to satisfy the six-month residency requirement of R.C. 3105.03.

**{¶10}** Where, as here, the disposition of a Civ.R. 12(B)(1) motion involves mixed questions of law and fact, we review the trial court's legal determinations de novo and must accept the trial court's findings of disputed facts if they are supported by competent, credible evidence. *See Wilkerson v. Howell Contractors, Inc.*, 163 Ohio App.3d 38, 2005-Ohio-4418, 836 N.E.2d 29 (1st Dist.), ¶ 10, citing *Rijo v. Rijo*, 1st Dist. Hamilton No. C-930704, 1995 WL 35730 (Jan. 31, 1995), *overruled on other grounds*, *Griffin I*, 1st Dist. Hamilton No. C-170026, 2017-Ohio-8450.

**{¶11}** Audrey's initial response invokes the waiver doctrine. She contends James waived his right to raise the issue on appeal when he stipulated in the agreed entry allocating parental rights and responsibilities that "Ohio has * * * subject matter jurisdiction" over the complaint for divorce. But it is well settled that "litigants cannot vest a court with subject-matter jurisdiction by agreement." *Cheap Escape Co., Inc. v. Haddox, LLC*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 22; *Glassman v. Glassman*, 75 Ohio App. 47, 50, 60 N.E.2d 716 (1st Dist.1944); *State v. Wyche*, 1st Dist. Hamilton No. C-160678, 2017-Ohio-7041, ¶ 11. Accordingly, we reject the waiver argument and address the issue of subject-matter jurisdiction on the merits.

**{¶12}** Ohio's relevant statute on jurisdiction provides that "[t]he plaintiff in actions for divorce and annulment shall have been a resident of the state at least six

months immediately before filing the complaint." R.C. 3105.03. The statute must be applied strictly. *Barth v. Barth*, 113 Ohio St.3d 27, 2007-Ohio-973, 862 N.E.2d 496, ¶ 11.

{¶13} As used in R.C. 3105.03, "resident" means " 'one who possesses a domiciliary residence, a residence accompanied by an intention to make the state of Ohio a permanent home.' " (Emphasis omitted.) *Barth* at ¶ 12, citing *Coleman v. Coleman*, 32 Ohio St.2d 155, 162, 291 N.E.2d 530 (1972); *Glassman*, 75 Ohio App. at 51, 60 N.E.2d 716.

{¶14} Courts routinely hold that "domiciliary residence" has two components: "(1) an actual residence in the jurisdiction, and (2) an intention to make the state of jurisdiction a permanent home." (Citations omitted.) *Hager v. Hager*, 79 Ohio App.3d 239, 244, 607 N.E.2d 63 (2d Dist.1992), cited in *Freels v. Powers-Freels*, 2d Dist. Clark No. 2015-CA-9, 2015-Ohio-3915, ¶ 7, and *Rijo,* 1st Dist. Hamilton No. C-930704, 1995 WL 35730.

{¶15} Generally, actual residence means "an abode or place of dwelling." *Hager* at 244, citing *Franklin v. Franklin*, 5 Ohio App.3d 74, 449 N.E.2d 457 (7th Dist.1981). Although an individual may have several residences at a given time, that individual can have only one domiciliary residence. *Id.*, cited in *Freels* at ¶ 8.

{¶16} James argues that the evidence does not support the trial court's determination that Audrey satisfied either component of domiciliary residence. He argues she never had an "actual residence" in the state because the Ohio home she lived in belonged to her parents. He further contends that she failed the second component because the evidence shows she intended to make Tennessee and then Florida her permanent home.

{¶17} The trial court, when determining the issue of Audrey's domiciliary residence, properly considered that Audrey was married to a member of the United States

Armed Forces. With respect to service members and their spouses, the jurisdiction where each was domiciled before a move pursuant to military orders remains each individual's domiciliary home, unless a new domicile is voluntarily selected. *See Heiney v. Heiney*, 157 Ohio App.3d 775, 777, 813 N.E.2d 738 (6th Dist.2004), cited in *Holtz v. Holtz*, 2d Dist. Greene No. 2005-CA-43, 2006-Ohio-1812, ¶ 20; *Glassman*, 75 Ohio App. at 54, 60 N.E.2d 716; *Freels* at ¶ 11; *Dobson v. Dobson*, 5th Dist. Stark No. 97CA0217, 1998 WL 519255 (May 18, 1998). The physical location of these individuals is not the result of their own volition. Thus, the domiciliary analysis with respect to service members and their spouses "is simply a question of intent." *Holtz* at ¶ 20, cited in *Freels* at ¶ 19.

**{¶18}** Here, the facts show that Audrey was domiciled in Ohio at the time she was required to leave the jurisdiction due to James's military orders. It is undisputed that she had resided in her parents' Ohio home until her departure in August 2013. James's contention that she needed a legal interest in real property at that time to establish an "actual residence" is not supported by any authority and is unfounded. Her parents' home qualified as her abode or place of dwelling in the state before she married and left the state due to James's military orders.

**{¶19}** James's contention that Audrey did not meet the second requirement of domiciliary residence at the time she filed the complaint is also unfounded. He fails to recognize that Audrey's domicile in Ohio was not lost until she acquired a new one. *Holtz* at ¶ 18, citing *E. Cleveland v. Landingham*, 97 Ohio App.3d 385, 390, 646 N.E.2d 897 (8th Dist.1994). "A person abandons [her] old domicile and acquires a new one only when [she] chooses a new domicile, establishes an actual residence in the chosen domicile, and demonstrates a clear intent that the new domicile become [her] primary and permanent residence." *Id.*

{¶20} The trial court determined based on the evidence presented that Audrey at all times had intended for Ohio to be her permanent home and had never changed her domicile. After noting that all of her moves out of Ohio were precipitated by military orders, the court stated:

> [Audrey] points to many factors to show her intent to maintain Ohio as her domicile, namely renewing her Ohio driver's license before moving to Tennessee and maintaining her Ohio nursing license. Subsequent to [James] receiving military orders to Tennessee, [Audrey] still chose Ohio as her home state for her nursing license. [Audrey] testified that she always planned to move back to Ohio after [James's] military career was completed. [Audrey] also maintained a bedroom at her parents' house in Anderson Township and lived there while [James] was training in Rhode Island.

{¶21} The trial court also noted the lack of objective evidence demonstrating Audrey's intent to change her permanent residence. The court noted that "the parties never purchased a home or sent out change of address cards. [Audrey] never registered her car, registered to vote, or obtained a driver's license in any state other than Ohio."

{¶22} James relies primarily upon the *Barth* case to support his argument that Audrey had changed her domiciliary residence to Tennessee and Florida. In that case, the Ohio Supreme Court determined that Ohio lacked jurisdiction over the appellant wife's complaint for divorce, even though her husband may have fraudulently enticed her to move to California, because the evidence showed she had abandoned Ohio when she moved to California. The *Barth* court found dispositive the "*undisputed facts*" that before learning of her husband's extramarital activities, the family had moved to California and

*was planning to remain in California.* (Emphasis added.) *Barth*, 113 Ohio St.3d 27, 2007-Ohio-973, 862 N.E.2d 496, at ¶ 13. Unlike the plaintiff in *Barth*, Audrey testified the family never planned to remain in Tennessee or Florida and had intended to return to Ohio at the conclusion of James's military obligation. Her testimony with respect to her intent was amply corroborated by her actions.

{¶23} James suggests that Audrey's actions such as renting apartments in Tennessee and Florida, changing her mailing address for bank statements, and selecting a state for filing taxes, required a determination that she had clearly intended to establish a domiciliary residence outside of Ohio. James, however, failed to comply with his duty to present his argument with citation to record. *See* App.R. 16(A)(7). Further, as discussed above, these actions must be viewed in context—the military family's moves were not voluntary, rather they moved pursuant to military orders. Because of this, the referred to actions are not determinative of Audrey's true intent to retain or replace Ohio as a domiciliary residence. *See Freels*, 2d Dist. Clark No. 2015-CA-9, 2015-Ohio-3915, at ¶ 12; *Holtz*, 2d Dist. Greene No. 2005-CA-43, 2006-Ohio-1812, at ¶ 20, ("[a] military person's designation of a state other than Ohio as his or her domiciliary residence on a military form required for tax purposes is not determinative of that person's true intent to make or keep Ohio as his or her domiciliary residence.").

{¶24} Consequently, we conclude that Audrey was a resident of Ohio for purposes of R.C. 3105.03 when she filed her complaint for divorce, even though she was not physically present in the state for the full six-month period before filing, because she never voluntarily changed her domicile, and therefore, it remained Ohio while she was living with James in Tennessee and Florida pursuant to his military orders. The domestic relations court had subject-matter jurisdiction over the divorce complaint, and the trial

court properly denied the motion to dismiss. Accordingly, we overrule the first assignment of error.

{¶25} In his third assignment of error, which we address next, James argues the trial court erred by not continuing or staying the August 30, 2016 hearing on his motion to dismiss for lack of subject-matter jurisdiction based on the provisions of SCRA. He contends the error was not just prejudicial to him, but also contradicts "every notion and ideology [on] which the courts were founded." Audrey argues that James waived this issue because he failed to object to the magistrate's decision on this basis and plain error does not exist in this case.

{¶26} Generally, a party's failure to object to a magistrate's finding of fact or conclusion of law waives the party's right to raise all but plain error with respect to that issue on appeal. *See* Civ.R. 53(D)(3)(b). Here, James failed to file an objection to the magistrate's denial of his motions to stay and continue and, importantly, he also failed to present the argument to the trial court at a time when the alleged error could have been avoided or corrected.

{¶27} For instance, our record does not demonstrate that James had asked the trial court to remand the cause for a new hearing in the event it sustained Audrey's objections. In light of these facts, we conclude that James has waived all but plain error related to the denial of his motion for a stay or a continuance of the hearing on subject-matter jurisdiction. *See Lesinski v. Henderson*, 112 Ohio App.3d 70, 75, 677 N.E.2d 1239 (1st Dist.1996), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 123, 512 N.E.2d 640 (1987) (" 'An appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's

attention at a time when such error could have been avoided or corrected by the trial court.' "); *Holtz*, 2d Dist. Greene No. 2005-CA-43, 2006-Ohio-1812, at ¶ 11.

{¶28} The plain-error doctrine may be applied in appeals of civil cases "only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. Even if we construe James's appellate argument as sufficiently raising a claim of "plain error," he cannot satisfy the high showing needed to establish plain error.

{¶29} James's claim fails because our record does not contain the evidence he now relies upon to show error in the denial of his motions. Specifically, James argues he was entitled to a stay or continuance because his commanding officer, in compliance with the requirements of SCRA[1] for an automatic stay, had indicated that James was unavailable. But the letter James references in support of his argument is not found in the

---

[1] 50 U.S.C. 3932 provides:
(a) Applicability of section
This section applies to any civil action or proceeding, including any child custody proceeding, in which the plaintiff or defendant at the time of filing an application under this section--
  (1) is in military service or is within 90 days after termination of or release from military service; and
  (2) has received notice of the action or proceeding.
(b) Stay of proceedings
  (1) Authority for stay
At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met.
  (2) Conditions for stay
An application for a stay under paragraph (1) shall include the following:
    (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.
    (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

trial court's record for our review; it is merely attached to James's appellate brief. As such, we cannot consider it. *See* App.R. 9(A)(1).

{¶30} Further, the magistrate offered James the opportunity to reopen the jurisdictional issue at the hearing on custody and property issues. James chose to settle the case instead. Because James cannot demonstrate any error, much less plain error, we overrule the third assignment of error.

{¶31} In his second assignment of error, James argues the trial court abused its discretion by adopting the parties' agreement allocating parental rights and responsibilities because the record demonstrates that James had entered into the agreement under duress.

{¶32} The parties' decision to partially end the divorce proceedings and agree to terms allocating parental rights and responsibilities resulted in a binding contract that one party may not unilaterally repudiate. *See Walther v. Walther*, 102 Ohio App.3d 378, 382, 657 N.E.2d 332 (1st Dist.1995). The domestic relations court's authority to enforce and adopt such an in-court settlement agreement is discretionary. *See id.* at 383. Generally, if the court is satisfied that the settlement agreement reached by the parties was not procured by fraud, duress, overreaching, or undue influence, the court may adopt the settlement agreement as its judgment. *Id.*, cited in *Federle v. Federle*, 1st Dist. Hamilton No. C-180171, 2019-Ohio-2565, ¶ 7.

{¶33} In support of his claim that he was operating under duress when he entered into the agreement, James cites *Gabel v. Gabel*, 3d Dist. Marion No. 9-04-13, 2004-Ohio-4292. In *Gabel*, a former spouse argued that an in-court custody agreement was the product of duress and therefore not enforceable. The *Gabel* court held that to establish duress, a party must show " '(1) that one side involuntarily accepted the terms of

another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.' " (Emphasis omitted.) *Id.* at ¶ 19, citing *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246, 551 N.E.2d 1249 (1990).

{¶34} Here, the record does not demonstrate that James had involuntarily accepted the offer. When entering the agreement on the record, the court made a number of inquiries to the parties, including if they had had the opportunity to discuss the agreement with counsel and if they understood the agreement. James responded in the affirmative and signed the agreed entry. At no point did he move to set aside the agreed entry in the trial court on the basis of duress. Further, the record shows that James ended the custody-and-property trial only after he had provided testimony that was very unfavorable to his position. Thus, absent from the record are facts demonstrating James's unsupported claim that the coercive acts of Audrey forced him to consent to the terms adopted by the court. With respect to duress, "[i]t is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Blodgett* at syllabus, cited in *Gabel* at ¶ 19.

{¶35} Because the record does not support James's claim that the trial court abused its discretion by adopting the parties' agreement on parental rights and responsibilities as it judgment, we overrule the second assignment of error.

{¶36} In his fourth assignment of error, James challenges the award of attorney fees to Audrey on the ground that the trial court failed to consider or improperly applied the factors set forth in R.C. 3105.18(H). According to James, these factors include his ability to pay and whether the party seeking fees needs them to fully litigate his or her rights and protect his or her interests.

**{¶37}** This argument is not tenable. R.C. 3105.18(H) was part of the Revised Code section on spousal support and does not exist as of 2005. The relevant statute for an award of attorney fees and litigation expenses in a divorce action is R.C. 3105.73(A). Unlike former R.C. 3105.18(H), R.C. 3105.73(A) does not explicitly require the trial court to consider the parties' ability to pay attorney fees or the requesting party's ability to litigate his or her rights fully. Instead, it provides:

> In an action for divorce * * *, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

R.C. 3105.73(A).

**{¶38}** Thus R.C. 3105.73(A) authorizes the court in a divorce action to award reasonable attorney fees to a party if the court finds the award "equitable" after considering the relevant factors, including the conduct of the parties, and other facts relevant to an equitable award. We review the trial court's award of fees under an abuse-of-discretion standard. *See Patterson v. Patterson*, 2011-Ohio-5644, 966 N.E.2d 898, ¶ 7 (1st Dist.); *Kane v. Hardin*, 1st Dist. Hamilton No. C-180525, 2019-Ohio-4362, ¶ 31; *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 102.

**{¶39}** The trial court adopted the magistrate's findings on the issue of fees and ordered James to pay $30,000 toward Audrey's fees of over $40,000. The magistrate had determined that a major portion of Audrey's fees in the divorce action were made necessary by James's "egregious behavior" during the pendency of the matter. The

magistrate cited to James's improper Florida petition and his failure to respond to orders of the court. The magistrate also found relevant that Audrey had paid for her litigation expenses while James relied on the "largesse" of his family to subsidize all of his litigation expenses.

**{¶40}** These findings are amply supported by the law and the evidence in the record. Thus, we conclude that the trial court's award of $30,000 in attorney fees to Audrey was equitable and not an abuse of discretion. Accordingly, we overrule the fourth assignment of error.

### Conclusion

**{¶41}** James has failed to demonstrate that the trial court erred by denying his motion to dismiss the divorce action for lack of subject-matter jurisdiction, adopting the parties' agreement on parental rights and responsibilities, and ordering him to pay some of Audrey's attorney fees. Therefore, the trial court's judgment is affirmed.

Judgment affirmed.

**MOCK, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

15