[Cite as *Kodu v. Medarametla*, 2016-Ohio-8020.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| UMESH KODU, | : | APPEAL NO. C-160319 |
|  |  | TRIAL NO. A-1500475 |
| Plaintiff-Appellee, | : |  |
| vs. | : | *O P I N I O N.* |
| KALARANI MEDARAMETLA, | : |  |
| and | : |  |
| JHANSIRANI MEDARAMETLA | : |  |
| Defendants-Appellants. | : |  |

Civil Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
                                        Remanded

Date of Judgment Entry on Appeal:  December 7, 2016

*Simon Groner*, for Plaintiff-Appellee,

*Edward J. McTigue*,  for Defendants-Appellants.

**STAUTBERG, Judge.**

{¶1}   This case arises from a dispute over $43,500. Defendant-appellant Kalarani Medarametla claimed that all but $15,000 of this amount was a gift from plaintiff-appellee Umesh Kodu, and—of the $15,000 that wasn't a gift—that she had repaid $14,000 of it. Kodu claimed that all of the $43,500 had been a loan and that none of it had been repaid. Defendant-appellant Jhansirani Medarametla is Kalarani Medarametla's mother, and was made a party to this case because some of the money-transfers from Kodu to Kalarani were funneled through Jhansirani.

{¶2}   Following a bench trial, the trial court found Jhansirani and Kalarani liable for fraud, conversion, and unjust enrichment.  It also found Kalarani liable for breach of contract for failing to repay the $43,500 in loans to Kodu.   In the alternative, the court found that even if the $43,500 at issue had been a gift, it had been a gift given in contemplation of a marriage that never occurred.  The court awarded Kodu $43,500 in compensatory damages and $70,000 in punitive damages. Based on the fact that it had awarded punitive damages, the court also awarded Kodu $43,341.45 in attorney fees.  This appeal followed.

## Facts

{¶3}   Kalarani and Kodu met on a dating website in August 2014.  Kalarani lived in Hamilton County and Kodu in Virginia.  They saw each other in person only twice, and their relationship ended around Thanksgiving 2014.  During this time, Kalarani, a divorcee, was embroiled in post-divorce-decree proceedings in this court and in the Hamilton County Court of Domestic Relations.  Kalarani shared the details of her legal problems with Kodu. She also told Kodu that she was living paycheck-to-paycheck supporting, her daughter, mother, and father, that she owed $50,000 in legal fees, and, according to Kodu, that she was very concerned about the cost of her post-decree proceedings.  Kodu offered to help.  To this end, Kodu wired $2,500 to Jhansirani's checking account so that Kalarani—who was a signatory on Jhansirani's account—could use the money to pay legal fees. Kodu later wired an

additional $4,000 to Jhansirani's account and sent Kalarani two cashier's checks in Jhansirani's name, one for $11,000 and another for $5,000. It appears that the parties agreed to funnel these payments through Jhansirani to avoid potential complications in Kalarani's post-divorce-decree proceedings. According to Kodu, the $4,000 wire transfer and the two cashier's checks were loans to Kalarani for the limited purpose of temporarily replenishing a custodial account that Kalarani held in her daughter's name. Kudo testified at trial that Kalarani had told him that if she did not have a $20,000 balance in her daughter's account, she would be held in contempt of court, could go to jail, and could lose custody of her daughter. Kodu also made a direct payment of $5,000 to an attorney on behalf of Kalarani and directly paid the domestic relations court $1,000 to cover guardian ad litem fees on behalf of Kalarani. Finally, Kodu said that Kalarani talked him into a $15,000 loan so that she could put a down payment on a condominium.

{¶4} Starting around December 2, 2014, after they had broken up, Kodu sent Kalarani a series of text messages and emails asking her to immediately repay him $15,000 because he needed it for tax purposes. Kodu also attempted to set forth terms of repayment for the remaining balance. Kalarani did not respond. Kodu then emailed her that he had "no choice" but to demand immediate repayment of all the money that he had sent to her. Kalarani replied via email, stating "Please stop contacting me." Kodu then drove to Cincinnati to try to reason with Kalarani's parents, who lived with Kalarani, about this matter. Kalarani's father allowed Kodu into their apartment, but Kalarani responded by calling the police and having Kodu removed. Kodu then sued.

{¶5} At trial, Kalarani testified that all but the $15,000 condominium loan had been a gift from Kodu because Kodu had been trying to impress her with his wealth while they were dating. And she claimed that Kodu had never said that any of $28,500 was a loan until after Kalarani had ended their relationship around

3

Thanksgiving 2014. She contended that Kodu had paid for the expenses associated with her post-divorce-decree proceedings in the hope that Kalarani could obtain full custody of her daughter and then move with her daughter to Virginia to be with Kodu. Kalarani admitted that she did not purchase a condominium with the $15,000, but claimed that she had paid him back $14,000 of it. Kalarani's daughter testified that she had witnessed her mother pay back Kodu.

{¶6} According to Kodu, Kalarani was extremely despondent over her legal problems and the expenses associated with them. Kodu testified that he pitied Kalarani and so he offered to loan her money to help. But he claimed that he told Kalarani that the money was a loan. And he said that he told her that he had to draw the money from his business accounts, and therefore he needed at least some of the money back by December 31, 2014, for tax purposes. In regard to the $5,000 retainer paid to Kalarani's attorney in particular, Kodu submitted to the trial court a copy of an email from Kalarani to her attorney. In it, Kalarani wrote that she had struggled to obtain the $5,000 retainer fee and that she had "borrowed it from others." Kodu also stated that even though some of the money had been funneled through her mother, all of it was intended to benefit Kalarani.

{¶7} Other pertinent evidence submitted at trial showed that Kalarani had made approximately $75,000 a year as a computer programmer, and a few thousand dollars a year operating a side business. Bank records of Kalarani's account showed that her salary was what she had represented it to be. Kodu also submitted evidence to the court that Jhansirani had tens of thousands of dollars in her accounts. It was not disputed that Kalarani had power of attorney over Jhansirani's accounts. Kodu testified that if he had known that Jhansirani had money, he would not have loaned Kalarani money because he would have expected Jhansirani to financially help her daughter. Kalarani contended at trial that she could not use the money in her

4

mother's account without permission. Jhansirani was not called as a witness by either party.

### Assignments of Error and Analysis

{¶8} In the first assignment of error, Kalarani contends that there was insufficient evidence to prove the existence of an oral loan contract or that she had breached it. Whether there was sufficient evidence to sustain a verdict presents a question of law that we review de novo. *See Eastley v. Volkman*, 123 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11.

{¶9} Essential elements of a contract include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and of consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, citing *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). An oral contract must be proven by clear and convincing evidence. *Clements v. Ohio State Life Ins. Co.*, 33 Ohio App.3d 80, 85, 514 N.E.2d 876 (1st Dist.1986). An oral agreement may be enforceable provided there "is sufficient particularity to form a binding contract." *Kostelnik* at ¶ 15. Proof of the terms of an oral contract rarely exists with the level of formality found in written contracts. Hence, the terms of an oral contract may be shown from the parties' words, deeds, acts, and silence. *Id.*

{¶10} Here, there is no question that Kodu gave $43,500 to Kalarani. And Kalarani agreed that $15,000 of this amount was a loan. As to the remaining $28,500, Kalarani contends that there was insufficient evidence submitted at trial to show that she had accepted the money with the understanding that it was a loan instead of a gift. We disagree.

{¶11} Kodu testified that he had told Kalarani, before giving her the money, that he needed to be paid back. Kodu also testified that he had specifically informed Kalarani, before giving her the $20,000 "custodial account money," that he would

need the money back by the end of 2014 for tax purposes. And he submitted into evidence an email in which Kalarani admitted that a $5,000 fee paid to her attorney by Kodu had been a loan. Kodu submitted to the court copies of emails and text messages showing that he started to demand repayment of at least $15,000 in early December 2014. Kalarani responded via email asking Kodu to leave her alone. On December 10, 2014, Kodu emailed Kalarani and told her that, if he did not hear from her, he had "no choice" but to demand immediate repayment of all of the money that he had advanced her. Kodu testified that Kalarani not only refused to communicate with him concerning repayment but that she called the police when he appeared at her home to speak with her parents about the situation. Kodu also pointed out that after he demanded repayment Kalarani did not respond via email or text that she had thought the money at issue had been a gift, and instead simply asked that he leave her alone.

{¶12} We hold that Kodu's testimony and exhibits, combined with Kalarani's behavior and her silence in failing to respond to Kodu's demand for repayment, were sufficient to show that Kalarani accepted the money given to her with the understanding that the money was a loan. Under these circumstances, there was sufficient evidence to show the existence of an oral loan contract.

{¶13} Kalarani next argues that even if the money was a loan, Kodu nevertheless failed to establish that she breached her agreement to repay him. We reject this argument. Kodu had been clear that Kalarani needed to repay him at least $15,000 by the end of December 2014. Kalarani did not repay him. As to the remaining amount due, where terms of repayment concerning an oral contract are not sufficiently clear, payment becomes due upon demand. *See Pomery v. Schwartz*, 8th Dist. Cuyahoga No. 99638, 2013-Ohio-4920, ¶ 30. Here, it was not disputed that Kodu demanded repayment of all the money loaned to Kalarani by mid-December

6

2014. And Kodu testified that Kalarani paid back none of it. We therefore hold that there was sufficient evidence that Kalarani had breached her contract with Kodu.

{¶14} Finally, Kalarani takes issue with the trial court's finding that she had not repaid any of the money. Kalarani testified at trial that she had repaid $14,000 of the $15,000 that Kodu had loaned her for a condominium down payment. Kalarani's daughter corroborated Kalarani's testimony. Kodu testified that Kalarani had not repaid him. Credibility determinations are primarily for the trier of fact. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We find no error in the court's determination that Kodu was more credible than Kalarani and her daughter.

{¶15} The first assignment of error is therefore overruled.

{¶16} In their second assignment of error, Kalarani and Jhansirani argue that there was insufficient evidence to prove fraud against either one of them. They are correct.

{¶17} The elements of fraud are

> a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Wiley v. Good Samaritan Hosp.*, 1st Dist. Hamilton Nos. C-030131 and C-030181, 2004-Ohio-763, ¶ 9, quoting *Burr* v. *Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 491 N.E. 2d 1101 (1986), paragraph two of the syllabus.

{¶18} The trial court found that Kalarani had misrepresented her financial situation and had also misrepresented why she needed the money. The trial court

7

determined that Kodu relied on these representations to his detriment by agreeing to loan her money. The trial court's judgment fails for two main reasons. First, Kalarani did not misrepresent her income. The bank records admitted at trial showed that Kalarani's pay was what she had told Kudo it was—approximately $75,000 a year. While the trial court found that Kalarani had had money available to her in her parents' account, there is nothing in the record to support a finding that Kalarani had permission to use her parents' money as she saw fit. Kalarani testified that she did not, and neither of her parents were called as witnesses. Second, Kodu admits on appeal that Kalarani was "undoubtedly * * * truthful when she told Kodu she needed the money for replenishing the custodial accounts, to retain an attorney, and to purchase a condo." The fact that Kalarani may not have ultimately used some of the money that Kodu had loaned her as intended was irrelevant, because Kodu's "resulting injury" occurred when Kalarani refused to repay him, and not because Kalarani did not use some of the money as she had allegedly said that she would. Because Kodu could not prove a materially false representation leading to his injury, Kodu failed to prove the elements of fraud as to Kalarani.

{¶19} As to Jhansirani, there was absolutely no evidence submitted to the trial court to support the elements of fraud. There is nothing in the record demonstrating that Jhansirani was involved in any of the discussions concerning the loans at issue, let alone that she made a false, material representation to Kodu that he reasonably relied upon to his detriment. Nevertheless, the trial court determined that Jhansirani was an "accomplice" to Kalarani's fraud and found her liable on that basis. We find no authority allowing for "accomplice" liability in a civil fraud action. And even if there was, because we have determined that Kalarani was not liable for fraud, the basis for the trial court's holding fails.

{¶20} We therefore hold that there was insufficient evidence of fraud. *See Eastley*, 123 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 11. We sustain the second assignment of error.

{¶21} In their third assignment of error, Kalarani and Jhansirani contend that there was insufficient evidence presented to the trial court to prove conversion. They are correct.

{¶22} Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights. *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). "It is fundamental that a plaintiff in a conversion action must show title or rightful ownership of the chattel, including money, at the time of the alleged conversion." *Levens Corp. v. Aberth*, 9th Dist. No. 15661, 1993 Ohio App. LEXIS 727, *7, (Feb. 10, 1993). In keeping with this requirement, a claim for conversion of money will lie only when the money at issue is earmarked or is capable of identification, such as money in a specific bag or certain coins or notes that have been entrusted to a defendant's care. *Smith v. Boston Mut. Life Ins. Co*, 1st Dist. Hamilton No. C-120668, 2013-Ohio-2510, ¶ 11. Further, the plaintiff must prove that there was an obligation to keep intact and deliver the specific, earmarked money rather than merely deliver a certain sum. *Id.*

{¶23} Here, Kodu proved only that a certain sum was due. The trial court therefore erred in holding Kalarani and Jhansirani liable for conversion, as its judgment was not supported by sufficient evidence. *See Eastley*, 123 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 11. The third assignment of error is sustained.

{¶24} In their fourth assignment of error, Kalarani and Jhansirani contend that the trial court erred in finding that they had been unjustly enriched, because there was insufficient evidence of unjust enrichment.

{¶25} It is well-settled in Ohio that an equitable claim for unjust enrichment will not lie where the subject of that claim is covered by a contract. *Great Water Capital Partners, LLC v. Down-Lite Internatl., Inc.*, 1st Dist. Hamilton Nos. C-150015 and C-150023, 2015-Ohio-4877, ¶ 18, citing *Ryan v. Rival Mfg. Co.*, 1st Dist. Hamilton No. C-810032, 1981 Ohio App. LEXIS 14729, *3 (Dec. 16, 1981). Here, Kudo recovered under a breach-of-contract theory. The trial court therefore erred by finding Kalarani and Jhansirani liable under a theory of unjust enrichment, as well. We therefore sustain this assignment of error, albeit on grounds other than those argued.

{¶26} In the fifth assignment of error, Kalarani contends that there was insufficient evidence to show that the transactions at issue were conditional gifts in contemplation of marriage, instead of simply gifts that she was entitled to keep regardless of the status of her relationship. Because we have already determined that the money at issue was not a gift but was a loan, this assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

{¶27} In their sixth and seventh assignments of error, Kalarani and Jhansirani contend that the trial court erred in imposing punitive damages and attorney fees. We address these assignments of error, together.

{¶28} Punitive damages may be awarded in tort cases involving fraud, insult or malice. *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 183, 327 N.E.2d 654 (1975). "If punitive damages are proper, the aggrieved party may also recover reasonable attorney fees." *Id*; *see Fulwiler v. Schneider*, 104 Ohio App.3d 398, 411, 662 N.E.2d 82 (1st Dist.1995). Here, the trial court awarded punitive damages on the basis that Kalarani and Jhansirani were liable for fraud and conversion and found an award of attorney fees to be proper based on its award of punitive damages. We have determined that the trial court improperly held Kalarani and Jhansirani liable for fraud and conversion. The trial court's award of punitive damages was

therefore improper, as was its award of attorney fees. We sustain Kalarani and Jhansirani's sixth and seventh assignments of error.

## Conclusion

{¶29} In sum, we reverse the trial court's judgment holding Kalarani and Jhansirani liable for fraud, conversion, and unjust enrichment, and we also reverse its award of punitive damages and attorney fees. We affirm its judgment holding that Kalarani breached her oral loan contract with Kodu and hold that the trial court properly awarded $43,500 in damages on Kodu's breach-of-contract claim. This cause is remanded to the trial court for entry of a judgment in favor of Kodu for $43,500, in accord with this court's opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

HENDON, P.J., and MOCK, J., concur.

Please note:

This court has recorded its own entry this date.

11