[Cite as *Shertok v. Wallace Group Gen. Dentistry For Today, Inc.*, 2020-Ohio-4369.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

DANIEL SHERTOK, D.D.S.,      :      APPEAL NOS. C-190457

         C-190464

     Plaintiff-Appellant/      :      TRIAL NO. A-1702101

     Cross-Appellee,

     : 

     vs.      :      *O P I N I O N.*

WALLACE GROUP GENERAL      : 

DENTISTRY FOR TODAY, INC.,

     : 

     and

     : 

NANCY WALLACE,

     : 

     Defendants-Appellees/

     Cross-Appellants.      : 

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 9, 2020

*Avonte Campinha-Bacote,* for Plaintiff-Appellant/Cross-Appellee,

*Jacobs, Kleinman, Seibel & McNally, LPA,* and *Mark J. Byrne*, for Defendants-Appellees/Cross-Appellants.

**MYERS, Judge.**

{¶1}    Daniel Shertok, D.D.S., appeals the trial court's judgment awarding $2,200 in attorney fees to Nancy Wallace and Wallace Group General Dentistry For Today, Inc., ("Wallace Group"), upon its finding that Shertok and his attorney engaged in frivolous conduct for attempting to file an unauthorized-practice-of-law claim against Wallace.  Wallace and Wallace Group appeal the trial court's judgment, arguing that the court should have awarded them $48,585.75 in attorney fees incurred as a result of defending Shertok's other claims, which they contend were frivolous.  For the reasons that follow, we affirm the trial court's rulings on both issues.

## I.  Factual Background

{¶2}    In September 2015, Wallace's husband, William Wallace, D.D.S., executed an agreement with ddsmatch.com of Dental Capital Holdings, LLC, and its broker Matthew Conrad to help with the sale of his dental practice, Wallace Group.  Around that time, Shertok was actively looking to buy a dental practice.

{¶3}    After Dr. Wallace passed away in December 2015, Shertok expressed interest in purchasing the Wallace Group, so Conrad arranged a meeting between Shertok and Wallace.  They met in January 2016 for Shertok to view the practice.  In late February 2016, Shertok made an offer of $655,000 to purchase Wallace Group.  Wallace rejected that offer and counter-offered $700,000.  On March 2, Conrad sent Shertok a letter of intent, unsigned by Wallace, listing a purchase price of $700,000.  The letter of intent indicated that the offer would expire on March 11.  On March 9, Conrad sent Shertok a second unsigned letter of intent with a later expiration date.  Shertok did not sign or return either letter of intent to Wallace.

{¶4} Negotiations continued. On March 23, Shertok made a counter-offer of $670,000 to purchase the practice. On March 30, Conrad responded to Shertok, indicating that Wallace was firm on a $700,000 purchase price.

{¶5} On April 30, Conrad, Shertok, and Wallace met. During that meeting, Wallace indicated that she wanted to raise the purchase price to $730,000 because she was in the process of making some improvements to the office. At that point, Shertok testified, his understanding from discussions with Wallace was that "the purchase price was going to be $700,000 and then at that meeting [Wallace] seemed to make it sound like she wanted it to be closer to $730,000 and that came as a surprise to both me and [Conrad]."

{¶6} On May 27, Shertok made a final offer of $700,000. On June 2, Conrad communicated to Shertok that Wallace said "it is ok to proceed and start moving forward." According to Shertok, it was at this point that Wallace accepted his offer of $700,000. On June 10, Conrad emailed Shertok a third unsigned letter of intent, which indicated a purchase price of $700,000.

{¶7} Throughout June, Wallace sent financial records to Shertok. Shertok's lawyer made changes to Conrad's June letter of intent, and Shertok forwarded the revised letter of intent to Conrad in July. By its terms, the third letter of intent would expire on July 31. Wallace did not respond.

{¶8} On August 8, despite the fact that the third letter of intent already expired, Shertok sent Conrad a notice that his offer would expire on August 12. Shertok received no response.

{¶9} That was the last correspondence between the parties until Shertok emailed Wallace on October 17, requesting reimbursement of his legal and accounting fees. Shertok explained in his email, "[S]ince I conducted business with The Wallace Group in good faith and did not receive the same in return, I am requesting that I be reimbursed so that I can use the funds toward purchasing a

practice from a truly motivated seller." Wallace replied that she had never signed a letter of intent but was willing to meet to work out the matter in a mutually beneficial way.

{¶10} On November 14, Shertok emailed Wallace, demanding reimbursement for expenses of $5,588.75 incurred as a result of her "bad-faith business dealings." Thereafter, Shertok's attorney emailed Wallace twice to let her know that Shertok would file suit against her if she failed to pay Shertok's expenses.

## II. Procedural Background

{¶11} In January 2017, Shertok filed in the municipal court a pro se complaint against Wallace and Wallace Group for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and promissory estoppel. Wallace filed pro se motions to dismiss the complaint on behalf of herself and Wallace Group. Shertok moved to strike Wallace Group's motion to dismiss on the ground that Wallace, a nonlawyer, could not represent the Wallace Group corporation.

{¶12} In March 2017, counsel appeared in the case on behalf of Wallace and Wallace Group and adopted the arguments and pleadings asserted by both defendants in their motions to dismiss. The defendants filed a memorandum in opposition to Shertok's motion to strike Wallace Group's motion to dismiss, arguing that Shertok's motion was moot because counsel now represented Wallace Group.

{¶13} Because the matter exceeded the jurisdictional amount of the municipal court, it was transferred to the court of common pleas, which ordered the case to mediation. In October 2017, the trial court struck Wallace Group's motion to dismiss because it was not filed by an attorney (it had been filed by Wallace) and overruled Wallace's motion to dismiss.

{**¶14**} In November 2017, the defendants filed an answer to Shertok's complaint. In December, the trial court scheduled the matter for trial in October 2018.

{**¶15**} In January 2018, three months after the trial court had stricken the Wallace Group's motion to dismiss, Shertok filed a motion for leave to amend his complaint to add an unauthorized-practice-of-law cause of action under R.C. 4705.07 against Wallace for her February 2017 filing of a motion to dismiss on behalf of Wallace Group. The defendants filed a memorandum in opposition, asserting that the trial court had no subject-matter jurisdiction over a claim brought against a person pursuant to R.C. 4705.07 until the Supreme Court of Ohio has first made a finding that the person had engaged in the unauthorized practice of law. Shertok filed a reply in which he acknowledged that, in order for a party to commence an action under R.C. 4705.07, the Supreme Court must first find that a violation has occurred. He requested that the trial court hold his motion to amend in abeyance pending a finding from the Supreme Court. Citing Shertok's failure to comply with R.C. 4705.07, the trial court overruled his motion for leave to amend.

{**¶16**} Over the next several months, the parties continued to engage in discovery and motion practice. Then, two weeks before the October 2018 trial date, Shertok voluntarily dismissed the action.

{**¶17**} The defendants moved for attorney fees and costs as sanctions for frivolous conduct, pursuant to R.C. 2323.51. An evidentiary hearing on the defendants' motion was initially scheduled for January 17, 2019, and Shertok's counsel, Avonte Campinha-Bacote, responded that he could not appear on that date. On January 28, the court mailed notice to counsel that the hearing would be February 21, 2019.

{**¶18**} On February 13, 2019, a week before the hearing, Campinha-Bacote filed a motion to withdraw in which he asserted that he had provided Shertok with

5

"copies of all documents sent, received, and generated * * * [and] the client has been apprised of all pending hearing dates and his obligations relative to such dates." At that time, the only pending hearing date was February 21. Campinha-Bacote alleged: "[Shertok] indicated that he would be securing counsel for the upcoming hearing, which Counsel understood to be Attorney Mark Woloshin[,] who has been in communication with [defense counsel]. It is also Counsel's understanding that the extension that was granted for the hearing was at the request of Attorney Woloshin and/or his communications with Defendants' counsel." The defendants opposed Campinha-Bacote's motion to withdraw.

{¶19} Shertok was represented by counsel Mark Woloshin at the February 21, 2019 evidentiary hearing at which Campinha-Bacote did not appear. At the hearing, defense counsel Mark Byrne testified that Frank Recker was the lawyer who was originally contacted by Wallace and that Recker's total fees in the case were $14,868.75. Byrne testified that he became involved in the case in March 2017. He testified as to his extensive experience and standing in the legal community and noted that he regularly engaged in expensive, protracted civil litigation. He testified that his hourly rate in this case was lower than his regular rate and lower than he had been awarded when he was an expert witness. He testified that his own fees were $32,820.

{¶20} Byrne testified to the work expended on behalf of the defendants, stating that "everything in the case was contested." In his opinion, his and Recker's bills were "both reasonable, and the hourly rate and the services that were required were necessary in order to adequately protect [Wallace and Wallace Group] in this litigation." Shertok did not cross-examine Byrne or object to Byrne's testimony or evidence.

{¶21} In March 2019, the trial court overruled Campinha-Bacote's motion to withdraw as counsel. In its entry, the court noted that its decision on the defendants'

R.C. 2323.51 frivolous-conduct motion remained pending and indicated that Campinha-Bacote might be found liable for attorney fees and costs.

{¶22} Shertok filed a supplemental memorandum in opposition to the defendants' motion for attorney fees. Shertok asserted that his conduct in moving for leave to amend the complaint to add an unauthorized-practice-of-law claim was not frivolous. Shertok attached to his memorandum an unsworn statement by Campinha-Bacote, who alleged that he had alerted the court to Wallace's unauthorized practice of law by filing a motion to strike Wallace Group's motion to dismiss and by reporting her conduct to the bar:

> I solicited the advice of several attorneys and peers experienced in ethical issues, and also called the Columbus Bar Association's ethics hotline. I was advised by all of these individuals that reporting the action to the Court and the Bar was either the correct thing to do, or an acceptable thing to do.

{¶23} In addition, Shertok asserted that Campinha-Bacote had never been informed by the court or anyone that the January 17 hearing date was being continued. Shertok stated that by the time Campinha-Bacote learned of the February 21 hearing date, Campinha-Bacote did not have ample time to object or move for a continuance.

{¶24} The court held an additional hearing on May 9, 2019, to allow Shertok's attorney to appear. At that hearing, the court limited evidence to that relating to Shertok's attempt to amend his complaint to add an unauthorized-practice-of-law claim. The court indicated that it did not believe that Shertok's other claims were frivolous: "[W]ith regard to the contract claims, I think that they are standard, and I don't think they require damages or sanctions." Shertok and Campinha-Bacote testified at the hearing.

{¶25} In July 2019, the trial court granted the defendants' motion for attorney fees as it related to the attempt to amend the complaint to add an unauthorized-practice-of-law claim. The court found that Shertok's attempt to amend his complaint was frivolous under R.C. 2323.51(A)(2)(a)(i) because it was an attempt to harass the defendants, and under R.C. 2323.51(A)(2)(a)(ii) because he had not first obtained the prerequisite determination by the Supreme Court of Ohio that Wallace had engaged in the unauthorized practice of law. The court found that Wallace, in filing a motion to dismiss on behalf of Wallace Group, had made a common error "whereby an individual pro se co-defendant, not licensed to practice law, will file an answer on behalf of herself and also file an answer on behalf of her affiliated business entity." The court noted that it had struck the motion to dismiss, and found, therefore, that Wallace's error in filing on behalf of her business "was harmless and quickly rectified." The court found that the defendants "were financially adversely affected by having to respond to [Shertok's] motion," and awarded the defendants $2,200 for their legal expenses related to Shertok's motion. The court further ordered that Shertok and Campinha-Bacote were jointly liable for the amount awarded to the defendants. The defendants and Shertok now appeal.

{¶26} In six assignments of error, Shertok argues that the trial court erred (1) by awarding fees against him and his counsel when it found that attempting to amend the complaint constituted frivolous conduct; (2) in awarding fees by failing to use the lodestar method; (3) by not letting him object to fees; (4) by awarding defendants an unreasonable amount of fees; (5) by relying on a hearing that included impermissible testimony concerning a confidential mediation; and (6) in relying upon the February 19, 2019 hearing, which violated his constitutional rights.

{¶27} In a single assignment of error, the defendants argue that the trial court erred by denying their motion for sanctions in the amount of $48,585.75 where

the evidence demonstrated that all of Shertok's claims against them were legally groundless and therefore frivolous as defined in R.C. 2323.51(A)(2)(a)(ii).

### III. Frivolous Conduct

{¶28} We begin with Shertok's first assignment of error and the defendants' sole assignment of error because they challenge the trial court's frivolous-conduct findings.

{¶29} A motion for sanctions under R.C. 2323.51 requires a trial court to determine whether the challenged conduct constitutes frivolous conduct as defined by the statute, and, if so, whether any party has been adversely affected by the frivolous conduct. *Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, ¶ 17 (1st Dist.). As relevant here, R.C. 2323.51(A)(2)(a) defines frivolous conduct as conduct that satisfies at least one of the following conditions:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation[;]
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law[.]

R.C. 2323.51(A)(2)(a)(i) and (ii).

{¶30} The standard of review to be applied to a trial court's decision on a request for sanctions under R.C. 2323.51 depends on whether there are questions of law or of fact or mixed questions of law and fact. *Fed. Natl. Mtge. Assn. v. Hirschhaut*, 1st Dist. Hamilton No. C-180473, 2019-Ohio-3636, ¶ 26. We review questions of law de novo. *Riston* at ¶ 22. On factual issues, we give deference to the trial court's factual determinations, which we will not disturb if they are supported

by competent, credible evidence. *Pitcher v. Waldman*, 1st Dist. Hamilton No. C-160245, 2016-Ohio-5491, ¶ 16.

**{¶31}** The ultimate decision as to whether to grant sanctions under R.C. 2323.51 rests within the sound discretion of the trial court. *217 Williams, LLC v. Worthen*, 1st Dist. Hamilton No. C-180101, 2019-Ohio-2559, ¶ 17; *Gianetti v. Teakwood, Ltd.*, 10th Dist. Franklin Nos. 17AP-606 and 17AP-618, 2018-Ohio-1621, ¶ 13 ("If a trial court finds frivolous conduct, the decision whether to assess a penalty lies within the sound discretion of that court."). An abuse of discretion occurs if the trial court's decision is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### A. R.C. 2323.51(A)(2)(a)(ii) (Not Warranted by Law)

**{¶32}** The trial court found that Shertok's attempt to amend his complaint to add an unauthorized-practice-of-law claim constituted frivolous conduct under R.C. 2323.51(A)(2)(a)(ii), as conduct that was "not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." But the trial court declined to find that Shertok's conduct in bringing his remaining claims was frivolous. Because legally groundless frivolous conduct involves a question of law, we review it de novo. *Riston*, 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, at ¶ 22. The test is whether no reasonable lawyer would have brought the action in light of existing law. *Pitcher* at ¶ 15.

**{¶33}** This standard requires courts to perform an objective review of the allegedly frivolous conduct. *Calypso Asset Mgt., LLC v. 180 Indus., LLC*, 2019-Ohio-2, 127 N.E.3d 507, ¶ 43 (10th Dist.). " 'As a matter of law, an attorney's ignorance of the law or failure to investigate the law is not deemed objectively reasonable.' " *Id.*, quoting *Kozar v. Bio-Medical Applications of Ohio, Inc.*, 9th Dist. Summit No.

21949, 2004-Ohio-4963, ¶ 17. A finding that counsel engaged in frivolous conduct is justified where reasonable inquiry by counsel should have revealed the inadequacy of a claim. *Ron Scheiderer & Assoc. v. London*, 81 Ohio St.3d 94, 97-98, 689 N.E.2d 552 (1998).

### i. Unauthorized Practice of Law

**{¶34}** In January 2018, Shertok sought leave to amend his complaint to add a claim against Wallace for unauthorized practice of law under R.C. 4705.07(A)(3), which provides: "No person who is not licensed to practice law in this state shall * * * [c]ommit any act that is prohibited by the supreme court as being the unauthorized practice of law." He alleged that Wallace, a nonlawyer, committed the unauthorized practice of law in February 2017 when she filed a pro se motion to dismiss on behalf of Wallace Group, and that he suffered damage as a result.

**{¶35}** Under R.C. 4705.07(B)(2), "[o]nly the supreme court may make a determination that any person has committed the unauthorized practice of law in violation of division (A)(3) of this section." R.C. 4705.07(C)(2) allows civil recovery for actual damages caused by the unauthorized practice of law, *Greenspan v. Third Fed. S. & L. Assn.*, 122 Ohio St.3d 455, 2009-Ohio-3508, 912 N.E.2d 567, ¶ 12, but the statute requires a determination by the Supreme Court that a person has committed the unauthorized practice of law before an action may be filed against the person based upon that conduct. R.C. 4705.07(C)(2) provides:

> Any person who is damaged by another person who commits a violation of division (A)(3) of this section may commence a civil action to recover actual damages from the person who commits the violation, *upon a finding by the supreme court that the other person has committed an act that is prohibited by the supreme court as being the unauthorized practice of law in violation of that division.* The court

in which that action for damages is commenced is bound by the determination of the supreme court regarding the unauthorized practice of law and shall not make any additional determinations regarding the unauthorized practice of law.

(Emphasis added.) "Clearly, the statute requires a finding by the Supreme Court that the unauthorized practice of law occurred, prior to commencement of a civil action based on that finding." *Sarum Mgt., Inc. v. Alex N. Sill Co.*, 9th Dist. Summit No. 23167, 2006-Ohio-5710, ¶ 32.

{**¶36**} Shertok argues that neither he nor his counsel was aware that a prerequisite for filing an unauthorized-practice-of-law claim was a determination by the Supreme Court that Wallace had engaged in the unauthorized practice of law. He asserts that his filing of a motion to add the claim without a prior finding by the Supreme Court was a simple mistake. However, R.C. 2323.51 employs an objective standard in determining whether a party or the party's attorney has engaged in frivolous conduct, without reference to what the individual knew or believed. *Walters v. Carter,* 8th Dist. Cuyahoga No. 108555, 2020-Ohio-807, ¶ 14; *Southard Supply, Inc. v. Anthem Contrs.*, 10th Dist. Franklin No. 16AP-545, 2017-Ohio-7298, ¶ 29, citing *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 21.

{**¶37**} Under the clear language of R.C. 4705.07(C)(2), no action could be commenced against Wallace for committing an act prohibited by the Supreme Court as being the unauthorized practice of law before the Supreme Court made a finding that Wallace had committed such an act. A reasonable inquiry by counsel would have revealed the inadequacy of an unauthorized-practice-of-law claim against Wallace in the absence of such a finding by the Supreme Court. *See Ron Scheiderer & Assoc.*, 81 Ohio St.3d at 97-98, 689 N.E.2d 552. In addition, as the trial court pointed out, Shertok suffered no damage as a result of Wallace's filing because the

court had stricken the pleading well before Shertok tried to amend his complaint to add an unauthorized-practice-of-law claim.

{¶38} Therefore, we agree with the trial court's determination that the attempt to amend Shertok's complaint to add an unauthorized-practice-of-law claim without first obtaining a finding by the Supreme Court that Wallace engaged in the unauthorized practice of law in violation of R.C. 4705.07(A)(3) constituted frivolous conduct under R.C. 2323.51(A)(2)(a)(ii) because it was not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, and cannot be supported by a good faith argument for the establishment of new law.[1] We overrule Shertok's first assignment of error.

### ii. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

{¶39} Next, we address the defendants' arguments that Shertok's conduct in filing claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and promissory estoppel constituted frivolous conduct under R.C. 2323.51(A)(2)(a)(ii).

{¶40} The duty of good faith and fair dealing is integral to any contract, so the breach of that duty is integral to a breach-of-contract claim. *Hillier v. Fifth Third Bank*, 2d Dist. Miami No. 2019-CA-21, 2020-Ohio-3679, ¶ 56. "In essence, a claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing." *Id.*, quoting *Krukrubo v. Fifth Third Bank*, 10th Dist. Franklin No. 07AP-270, 2007-Ohio-7007, ¶ 19. Because a claim for breach of the covenant of good faith and fair dealing is not a separate action from a breach-of-

---

[1] Because we have determined that the trial court properly found the conduct in attempting to amend the complaint to be frivolous conduct as defined in R.C. 2323.51(A)(2)(a)(ii), we do not reach the trial court's finding of the same conduct to be frivolous under R.C. 2323.51(A)(2)(a)(i).

contract claim, we address those claims together. *See Richardson v. Clinical Computing P.L.C.*, 2016-Ohio-8065, 69 N.E.3d 754, ¶ 39 (1st Dist.).

{¶41} The essential elements of a contract include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and of consideration. *R & A Lawn Care, LLC v. Back*, 1st Dist. Hamilton No. C-160682, 2017-Ohio-4404, ¶ 16, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. The terms of an oral contract are often not as easily discernable as the terms of a written contract. *Id.*, citing *Kodu v. Medarametia*, 1st Dist. Hamilton No. C-160319, 2016-Ohio-8020, ¶ 9. Thus, the terms of an oral contract may be determined based on the parties' words, deeds, acts, and silence. *Id.*

{¶42} Shertok's breach-of-contract claim alleged that the defendants breached their contract with him by failing to sell the dental practice to him, contrary to the defendants' oral and written assertions. Shertok asserted that the defendants breached their duty of good faith and fair dealing by failing to make honest representations concerning the sale of the practice and by "recruiting, luring, encouraging, or otherwise allowing [Shertok] to incur expense as it related to the sale of Wallace Group."

{¶43} Three letters of intent had been sent to Shertok, the final one expiring by its terms on July 31, 2016. Then Shertok, through his lawyer, revised the final letter of intent. Neither Wallace nor Shertok signed any of the letters of intent, each of which contained the following language:

> Binding Effect. This Letter does not constitute a binding agreement by any party to purchase or sell the Assets but merely expresses the parties' good faith intent to discuss, determine the feasibility of and negotiate the terms [of] the Transaction.

{¶44} Because the letters of intent were nonbinding by their own terms and had not been signed by either party, there was no written contract between the

14

parties. Even Shertok's counsel acknowledged that no such written contract existed. In his November 23, 2016 letter to Wallace, advising her to seek counsel, Campinha-Bacote stated:

> [S]uffice it to say that parties do not have to be in a contract with one another to be subject to a lawsuit. A breach of contract (which is probably what you are referring to) has nothing to do with the claims we will be suing you and your practice for, because like you correctly note, there was no written contract here. There are several laws which govern the conduct of parties (without the need for a written contract), as well as many other equitable claims such as promissory estoppel.

{¶45} According to Shertok, after he made an offer of $700,000, Conrad communicated that Wallace agreed that it was okay to then start moving forward, and Conrad sent Shertok a letter of intent indicating a $700,000 purchase price. It may have been reasonable for Shertok to believe that he and Wallace had an oral agreement on a $700,000 purchase price and that Wallace breached the agreement when she indicated that she was increasing the price to $730,000. Although Shertok's claims for breach of contract and breach of the covenant of good faith and fair dealing may not have survived a summary-judgment motion or been successful at trial, we cannot say that they were legally groundless.

### iii. Negligent Misrepresentation

{¶46} "The elements of negligent misrepresentation are as follows: 'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise

reasonable care or competence in obtaining or communicating the information.' "

*Veterinary Dermatology, Inc. v. Bruner*, 1st Dist. Hamilton No. C-040648, 2005-Ohio-5552, ¶ 40. A claim for negligent misrepresentation requires an affirmative false statement. *Id.* at ¶ 41.

**{¶47}** In his complaint, Shertok alleged that the defendants, directly or through their agent/broker, failed to provide complete and accurate information to him about the sale of their dental practice. Specifically, Shertok testified that when Wallace mentioned that she was making improvements to the practice and trying to bring in new doctors, he "believe[d] it was untrue that she was planning to sell me the practice." Whether or not Shertok's negligent-misrepresentation claim would have been successful, we cannot say that no reasonable lawyer would have brought the claim.

### iv. Promissory Estoppel

**{¶48}** A successful claim for promissory estoppel requires that " '[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading.' " *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 39, quoting *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 34. "Thus, promissory estoppel is an adequate remedy for a fraudulent oral promise or breach of an oral promise, absent a signed agreement." *Id.* at ¶ 40.

**{¶49}** In his complaint, Shertok alleged that the defendants made false representations to him regarding the sale, and their intent to sell, their dental practice. He asserted that he was duped into thinking the defendants were selling

the practice and incurred significant cost and expense in relying on their representations. Because Shertok allegedly relied on Wallace's communications, he may have reasonably believed that she intended to sell him the practice, and he incurred expenses in doing so.

{¶50} We cannot conclude that no reasonable lawyer would have filed the claims for breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, or promissory estoppel, so they were not legally groundless under R.C. 2323.51(A)(2)(a)(ii). Therefore, we overrule the defendants' sole assignment of error.

## IV.  Calculation of Fees

{¶51} In his second assignment of error, Shertok argues that the trial court erred by awarding attorney fees without using the lodestar method. In his fourth assignment of error, he argues that the court erred by awarding an unreasonable amount of fees. Because both assignments of error relate to the court's calculation of a reasonable award of attorney fees, we address them together.

{¶52} Under R.C. 2323.51(B)(1), sanctions for frivolous conduct may include reasonable attorney fees. *217 Williams, LLC*, 1st Dist. Hamilton No. C-180101, 2019-Ohio-2559, at ¶ 15. A trial court may make an award of attorney fees "against a party, the party's counsel of record, or both." R.C. 2323.51(B)(4).

{¶53} "[T]here is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the 'lodestar,' is the proper amount for an attorney-fee award." *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, Slip Opinion No. 2020-Ohio-1056, ¶ 19. A reasonable hourly rate is the prevailing market rate in the community, taking into consideration the complexity of the issues and the attorney's experience. *Id.* at ¶ 11. Although a trial court exercises broad discretion in applying the lodestar method, it

17

must state the basis for the fee determination to allow for meaningful appellate review. *Calypso Asset Mgt., LLC,* 2019-Ohio-2, 127 N.E.3d 507, at ¶ 29.

{¶54} At the February 2019 hearing, defense counsel testified to the work expended on behalf of the defendants, about his own experience with protracted civil litigation, and about the reasonableness of his rates and services. Shertok did not cross-examine defense counsel or object to defense counsel's testimony. Shertok offered no expert testimony of his own regarding the reasonableness of the rates or the hours spent. Nor did Shertok object to the admission of defense counsel's invoices or question the reasonableness of the hours expended or of the rates charged.

{¶55} In its entry awarding attorney fees to the defendants, the trial court noted that defense counsel submitted detailed and itemized invoices for legal services, and that Shertok did not object to the reasonableness of defense counsel's fees or invoices. The court incorporated into its entry copies of defense counsel's invoices and the court's own detailed notations on those invoices which reflected the hourly rate and number of hours worked. Therefore, we are persuaded that the court appropriately stated the basis for its use of the lodestar method in determining the award of fees. Given the uncontroverted evidence presented, we cannot say that the court abused its discretion in awarding the amount of fees that it determined were related to Shertok's frivolous conduct. We overrule Shertok's second and fourth assignments of error.

*V.  Shertok's Failure to Object to Fees*

{¶56} In his third assignment of error, Shertok argues that the trial court erred by not allowing him to object to evidence of the defendants' attorney fees. This assertion is simply not supported by the record. Shertok was represented by counsel at the February 2019 hearing and raised no objection to the evidence of the

18

defendants' attorney fees or to the reasonableness of the fees. And Shertok's counsel, Campinha-Bacote, appeared at the May 2019 hearing, but did not attempt to examine defense counsel.

{¶57} The trial court gave Shertok more than enough opportunity to object to the evidence. We overrule Shertok's third assignment of error.

## VI. Testimony about Mediation

{¶58} In his fifth assignment of error, Shertok argues that the trial court erred in relying on impermissible testimony at the February 2019 hearing from defense counsel concerning a confidential mediation. He relies on R.C. 2710.03 and 2710.07 for the proposition that mediation communications are privileged and confidential and generally inadmissible in evidence. Specifically, Shertok objects to the following statement by defense counsel: "[B]ut it was almost as if it was a shake down, Judge, because we were talking about * * *, a little bit more than * * *. Even when we went to the mediation, they wanted * * * for a bill that was * * *?" However, Shertok failed to object to the testimony at the hearing. He cannot complain on appeal about an error he did not bring to the court's attention at a time when the error could have been avoided or corrected. *Griffin v. Griffin*, 1st Dist. Hamilton No. C-180550, 2019-Ohio-5260, ¶ 27, quoting *LeFort v. Century 21-Maitland Realty Co*, 32 Ohio St.3d 121, 123, 512 N.E.2d 640 (1987). Moreover, given that the trial court awarded the defendants only $2,200 of their claimed $48,000 attorney fees, Shertok cannot demonstrate that the trial court considered, let alone relied on, defense counsel's statement in awarding fees to the defendants. We overrule Shertok's fifth assignment of error.

## VII. Notice of the February Hearing

{¶59} In his sixth assignment of error, Shertok argues that the trial court erred by "relying on the February 21, 2019 hearing, which violated [his]

constitutional rights." He asserts that the court should not have relied on evidence given in the February hearing because his attorney, Campinha-Bacote, did not receive sufficient notice of the hearing.

{¶60} However, the record demonstrates that Campinha-Bacote did receive sufficient notice of the February 21 hearing. Shertok testified that Campinha-Bacote had apprised him of the February 21 hearing date in advance of the hearing and told him that he would not be present at that hearing. Shertok also testified Campinha-Bacote had spoken to Woloshin about a week or two before the February 21 hearing. And Campinha-Bacote's February 13 motion to withdraw indicated that he had apprised Shertok of "all pending hearing dates." The only pending hearing date at that time was the February 21 hearing date.

{¶61} Campinha-Bacote testified that he received the court's email notice of the February 21 hearing, but said that he "did not access that until after the hearing." Campinha-Bacote admitted that he knew of the February 21 hearing before it occurred, and that he failed to take steps to continue the matter or to otherwise contact the court. The court asked Campinha-Bacote, "[Y]ou didn't think to call in and talk to [courtroom personnel] or email him or anything like that? Because we are pretty lenient in here about that[.]" Campinha-Bacote replied that he should have simply filed a motion for continuance and he did not.

{¶62} The record demonstrates that Campinha-Bacote received sufficient notice of the February 21 hearing and that Shertok was represented by counsel at the hearing. Consequently, Shertok has not demonstrated how the court's hearing violated his constitutional rights. We overrule Shertok's sixth assignment of error.

### IV. Conclusion

{¶63} Having overruled each of Shertok's assignments of error and the defendants' sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:

> The court has recorded its own entry this date.